In re Johnny Lee SIGMAN and Stella Mae Sigman, Debtors.

Johnny Lee Sigman and Stella Mae Sigman, Movants,

v.

Aetna Life Insurance Co., Respondent.

No. 01–10623.

United States Bankruptcy Court, S.D. Ohio, Western Division.

Dec. 7, 2001.

Valerie K. Gerlach, Portsmouth, OH, for debtors.

Daniel A. DeMarco, Julie K. Zurn, Cleveland, OH, for Aetna.

David W. Kuhn, Portsmouth, OH, trustee.

### DECISION AND ORDER ON DEBTORS' MOTIONS TO PUNISH AETNA FOR CONTEMPT, ETC.

BURTON PERLMAN, Bankruptcy Judge.

Debtors, Johnny Lee Sigman and Stella Sigman, filed a Motion for Contempt, Sanctions and for Expenses against Aetna Life Insurance Company (hereafter "Aetna"). The motion asserted that Aetna violated the automatic stay granted pursuant to 11 U.S.C. § 362(a) and the discharge injunction imposed pursuant to 11 U.S.C. § 524(a) by withholding payments owed to the debtors and applying those payments to debt that was discharged. Aetna filed a response to the motion denying these contentions. Aetna stated that it was exercising its right to recoupment, and therefore was not in violation of the automatic stay or the discharge injunction.

After discovery was concluded the parties agreed to submit the matter for resolution based on an agreed stipulation of facts. The parties individually also filed supplemental memoranda and responses. Based on the following conclusions of law and fact, the Court denies the debtors' motion.

In pertinent part, the facts stipulated by the parties may be summarized as follows:

Debtor Stella Sigman was an employee of Southern Ohio Medical Center. (Hereafter, when reference is made to "debtor" in the singular, it will refer to debtor Stella Sigman.) Aetna provided Southern Ohio Medical Center's employees a Long Term Disability Plan ("LTDP"), entitled Group Life and Accident and Health Insurance Policy.[1] In January, 1999, debtor became

---

1. The court notes that debtor has objected to a late filing of the copy of this policy of Aetna

eligible to receive long term disability payments pursuant to Aetna's LTDP. The payments to debtor began in February, 1999. In April, 2000, debtor was found to be disabled by the Social Security Administration, which provided that debtor's first month of entitlement to Social Security Disability Income Benefits ("SSDIB") would be retroactive to January, 1999. The Social Security Administration sent the debtor back pay dating to January, 1999 and the debtor still continues to receive SSDIB every month.

In June, 2000, Aetna discovered that debtor was receiving SSDIB. The LTDP provided that, in the event the debtor begins receiving SSDIB, Aetna's liability under the LTDP will be adjusted downward proportionately. Because of the retroactive SSDIB payments awarded to the debtor, Aetna had made a total overpayment in the amount of $6,986.34. Aetna started to reduce the outstanding balance of the overpayment by deducting money from the debtor's May, 2000 payment. The current balance owed to Aetna because of the overpayment is $4,809.06.

On February 5, 2001, the debtors filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. In their bankruptcy petition, Aetna was listed by the debtors as an unsecured creditor. Aetna received notice of filing of the debtors' bankruptcy case. Aetna has continued post-petition to deduct from LTDP monthly payments due to debtors. Aetna did not file a complaint to determine dischargeability, a proof of claim, or a motion for relief from stay. The debtors received a discharge with respect to their dischargeable debts on May, 30, 2001.

## DISCUSSION

The debtors argue that Aetna's deduction of the overpayment after the filing of the bankruptcy petition constitutes willful violation of the automatic stay. The debtors further argue that Aetna's continuing deduction of overpayment after discharge violates the discharge injunction provision of the Bankruptcy Code. Aetna counters by raising the affirmative defense of recoupment. In response, the debtors state that Aetna's deduction of the overpayment is not recoupment but rather a setoff, which is subject to the automatic stay and the discharge injunction.

The distinction between a setoff and recoupment is very important in bankruptcy because the Bankruptcy Code places strict limitations on the ability of a creditor to setoff mutual debt it owes to the debtors while not specifically addressing recoupment. *In re B & L Oil Co.*, 782 F.2d 155, 157 (10th Cir.1986). A setoff is allowed in only very narrow circumstances and it is subject to the automatic stay. 11 U.S.C. § 362(a)(7); *Aetna Life Insurance Co. v. Bram (In re Bram)*, 179 B.R. 824 (Bankr.E.D.Tex.1995). "A setoff is usually asserted for the purpose of reducing or extinguishing a *mutual* debt arising from *different* transactions. 11 U.S.C. § 553. Collier on Bankruptcy, ¶ 553.03 (15th ed.1994)." *Id.* at ¶ 826. "However, setoff is limited under the Bankruptcy Code and may not be used to offset a creditor's pre-petition claim against post-petition obligations owed the debtor." *Lee v. Schweiker*, 739 F.2d 870, 875 (3rd Cir.1984); 11 U.S.C. § 553(a).

On the other hand, recoupment involves offsetting claims of the creditor and the debtors that arise from the **same**

Life Insurance Company. Because such filing is not prejudicial, the objection is overruled.

transaction. *University Med. Ctr. v. Sullivan (In re University Med. Ctr.)*, 973 F.2d 1065 (3rd Cir.1992) (emphasis added). Although not provided in the Bankruptcy Code, the recoupment doctrine has been long recognized as applicable in bankruptcy cases. *Schweiker, supra*, at 875. "In the context of a bankruptcy case, the salient features of the doctrine ... are (1) a valid right to recoupment is not subject to the discharge injunction provided for in 11 U.S.C. § 524; and (2) the claim giving rise to the right of recoupment may arise either before or after the commencement of the bankruptcy case, thus permitting a party to recoup a pre-petition claim against a post-petition liability and vice-versa. *Sheehan v. Wiener (In re Wiener)*, 228 B.R. 647, 650 (Bankr.N.D.Ohio 1998)." *Reeves v. Columbia Gas of Ohio (In re Laureen Reeves)*, 265 B.R. 766, 770 (Bankr.N.D.Ohio 2001).

The main difference between a setoff and recoupment is that recoupment arises out of the same transaction rather than separate, mutual transactions. Thus, in the present case, the key issue is whether debt obligation presently owed to Aetna by debtor, and the overpayment Aetna made to the debtor arose from the same transaction. Debtors maintain that the debt and the overpayment did not arise from the same transaction. They contend that Aetna had a contract only with Southern Ohio Medical Center, the debtor's employer, to provide long term disability insurance, and there was no contract between the Aetna and debtor. Aetna rejects this argument. Aetna submitted as evidence copies of cancelled monthly benefit checks paid by Aetna and endorsed by the debtor. On the back of those checks and above the debtor's signature the following appeared: "I attest that my disability claim is true and accurate, I understand that if I am overpaid disability benefits, I will have to pay back any overpayments in accordance with my disability plan's description, which includes deductions from any future benefits." Aetna maintains that the monthly benefit checks and the LTDP are thus connected with the same transaction.

■ Although the term "same transaction" has been given different interpretations by courts, which vary in degree of restrictiveness, it is clear that claims arising from a single integrated transaction satisfy the "same transaction" requirement. *Reeves v. Columbia Gas of Ohio*, 265 B.R. at 770, 771 (citing *University Med. Ctr. v. Sullivan*, 973 F.2d 1065, 1081 (3rd Cir.1992)). "Courts, when faced with the applicability of the recoupment doctrine, generally apply a fact-based approach in determining whether two opposing sets of claims arose from the same integrated transaction ... In applying a fact-based approach, the predominate consideration, given the equitable nature of the recoupment doctrine, is whether it would be fair for the debtors to enjoy the benefits of the transaction without also meeting its obligations." (Citing *Malinowski v. New York State Department of Labor (In re Malinowski)*, 156 F.3d 131, 133 (2nd Cir.1998).)

■ In *Gunnells v. Aetna Life Insurance Co. (In re Gunnells)*, Case No. A90–10133–SWC, Order entered April 23, 1991 (Bankr.N.D.Ga.), the debtor was insured by Aetna for long term disability. The debtor also had signed an "additional" agreement with Aetna where the debtor promised to notify Aetna if he received social security disability benefits. After the debtor became disabled and started to received monthly benefits from Aetna, he failed to notify Aetna that he was also receiving social security disability benefits. This failure of notification led to overpayments by Aetna. The debtor then filed a Chapter 13 bankruptcy petition. The

court in that case held that the two agreements involved the same transaction and that the creditor's collection efforts, which came in the form of deductions from monthly benefit payments, were in the nature of recoupment. *See also Reeves, supra,* at 766 (reading the Receipt Agreement, where the debtor promised to pay back any funds she used from her corporate card, and the Severance Agreement, where the creditor provided for salary continuation, as part of a single integrated transaction.).

In the present case, there are two different agreements. The first one is the LTDP, which was a contract between the debtor's employer and Aetna. The LTDP provided long term disability insurance to the debtor. The second agreement is between the debtor and Aetna. This second agreement consist of a series of monthly benefit checks paid by Aetna to the debtor. The back of the checks, which were signed by the debtor, states that the debtor will "pay back any overpayments in accordance with my disability plan's description" Although there are two different agreements, Aetna's obligation to pay the debtor and the debtor's obligation to reimburse Aetna were mutual. The performance of each obligation was dependent on the other. The debtor promised to pay back any overpayments in order to receive monthly benefit funds. Therefore, pursuant to the reasoning of the above-cited cases, we hold that the monthly benefit checks and the LTDP are part of a single integrated transaction. As the court in *Reeves* stated, "if, at time the parties entered into contract, it was intended that performance of the obligations which now give rise to the opposing claims were dependent on each other, then equity holds that such claims should be deemed to have arisen form a single integrated transaction." *Reeves, supra,* at 771. Accordingly, Aetna has a right of recoupment against the funds it owes to the Debtors pursuant to the LTDP.

 Debtors contend that even if this is a recoupment rather than a setoff, Aetna should not be allowed to recoup its overpayments because they failed to file a proof of claim or commence an adversary proceeding to determine dischargeability. Debtors also assert that recoupment is subject to the discharge injunction, which Aetna violated by continuing to deduct funds from the debtor's monthly benefit checks after the filing of the bankruptcy petition. The right to recoupment does not give a right to actual payment, it is not a claim. *Mercy Hosp. Of Watertown v. N.Y. State Dept.,* 171 B.R. 490, 494 (N.D.N.Y.1994). Furthermore, "the right to recoupment does not constitute a debt which is dischargeable." *Bram, supra,* at 827. Since the recoupment is neither a claim or a debt that is dischargeable, Aetna had no obligation to file a proof of claim or to commence a dischargeability proceeding. Furthermore, Aetna is not in violation of the discharge injunction because, as stated above, the right to recoupment is not a debt which is dischargeable.

Accordingly, debtor's Motions for Contempt, Sanctions, and for Expenses are denied in their entirety.

So Ordered.