OPINION
{¶ 1} Defendant-appellant, Transportation Transit Associates, LLC, appeals, and plaintiff-appellee, Columbus Steel Castings Company cross-appeals, from a judgment of the Franklin County Court of Common Pleas that in effect granted summary judgment in favor of Columbus Steel Castings Company. For the reasons that follow, we reverse the judgment of the common pleas court and remand the matter to that court. *Page 2 
 {¶ 2} In September 2000, TTA Manufacturing, a division of Transportation Transit Associates, LLC ("TTA"), and Buckeye Steel Castings Company, Inc. ("Buckeye Steel") executed a purchase order in which Buckeye Steel agreed to manufacture, sell, and deliver truck components to TTA for the manufacture of train cars. TTA, in turn, apparently installed, among other things, wiring harnesses and delivered the assembled products to Alstom Transportation. Alstom Transportation then purportedly performed finishing tasks and delivered the assembled train cars to the New Jersey Transit Authority.
 {¶ 3} Between December 2000 and November 2002, Buckeye Steel provided approximately 155 separate deliveries of truck components to TTA. (Complaint, at paragraph 7.) Sometime in 2002, however, Buckeye Steel stopped filling orders as required under the purchase agreement with TTA. Although TTA accepted delivery of all 155 separate shipments, TTA failed to pay for 21 of these separate deliveries. (Complaint, at paragraph 8.)
 {¶ 4} In December 2002, Buckeye Steel and certain of its affiliates ("debtors") sought Chapter 11 bankruptcy protection. (Complaint, at paragraph 10.) That same day Buckeye Steel and Columbus Steel Castings Company ("Columbus Steel Castings") entered into an asset purchase agreement. Id. After receiving approval from the bankruptcy court, Columbus Steel Castings later purchased the assets, including accounts receivable, of Buckeye Steel and certain of its affiliates. (Complaint, at paragraph 16.)
 {¶ 5} Claiming that TTA was in default of payment obligations under an account receivable, Columbus Steel Castings later sued TTA in the Franklin County Court of Common Pleas for payment of an alleged debt. TTA asserted recoupment as an affirmative *Page 3 
defense, as well as other affirmative defenses and also asserted a breach-of-contract counterclaim against Columbus Steel Castings.
 {¶ 6} In its counterclaim, TTA alleged, among other things, that Buckeye Steel failed to deliver all the required truck components under the purchase order agreement; Columbus Steel Castings was subject to any defenses that TTA may have had against Buckeye Steel; and TTA was damaged in excess of any account claim that Buckeye Steel may have had against it. (Counterclaim, at paragraphs 1-3.) TTA further alleged that, after Buckeye Steel failed to perform under the purchase order agreement, TTA and Buckeye Steel executed a second purchase order; Alstom Transportation agreed to make advance payments for components under the second purchase order agreement; and Buckeye Steel breached this second purchase order agreement. (Counterclaim, at paragraphs 8-10.)
 {¶ 7} Columbus Steel Castings thereafter moved for summary judgment. TTA made a competing request for relief by filing a cross-motion for summary judgment. Finding that neither party was entitled to judgment as a matter of law, the trial court denied the parties' motions for summary judgment.
 {¶ 8} Claiming that TTA lacked standing under R.C. 1705.58 to assert a counterclaim or to assert the defense of recoupment, Columbus Steel Castings then moved in limine to preclude TTA from asserting a counterclaim or the defense of recoupment, or both. Columbus Steel Castings also moved for leave to amend instanter its answer to TTA's counterclaim so that it could raise lack of standing by TTA as an additional defense. Claiming that TTA was precluded from proffering evidence contrary to the deposition testimony of TTA's corporate designee, Columbus Steel Castings also moved in limine to *Page 4 
preclude TTA from introducing evidence of damages that was contradictory to TTA's corporate designee's deposition testimony.
 {¶ 9} The trial court thereafter granted Columbus Steel Castings' motion in limine to preclude TTA from asserting the affirmative defense of recoupment or from asserting a counterclaim. In its decision, the trial court explained its reasoning as to why recoupment was not available as a defense; however, the trial court provided no explanation as to why TTA was precluded from asserting its counterclaim.[1]
 {¶ 10} Although the trial court granted Columbus Steel Castings' motion in limine to preclude TTA from asserting the affirmative defense of recoupment or from asserting a counterclaim, the trial court denied Columbus Steel Castings' motion in limine to exclude testimony that was contradictory to TTA's corporate designee's deposition testimony, and the trial court denied as moot Columbus Steel Castings' motion to amend instanter its answer to TTA's counterclaim.
 {¶ 11} The trial court then issued a judgment entry, wherein it declared in part:
 Because TTA's remaining defenses were extinguished in the Buckeye Steel Company's bankruptcy, only recoupment remained as a defense. Preventing TTA from asserting its defense of recoupment affects a substantial right of TTA and effectively determines the action in favor of Plaintiff Columbus Steel Casting Company.
 Accordingly, the Court finds that there is no just reason for delay in the entry of judgment on Columbus Steel Casting Company's Complaint. * * *[2] *Page 5 
 {¶ 12} From the trial court's judgment, TTA appeals, and Columbus Steel Castings cross-appeals.
 {¶ 13} In its appeal, TTA assigns the following three errors for our consideration:
 [1.] The trial court erred by denying summary judgment as a matter of law in favor of Defendant-Appellant Transportation and Transit Associates, LLC ("TTA").
 [2.] The trial court erred as a matter of law by precluding TTA from asserting the defense of recoupment.
 [3.] The trial court erred as a matter of law by granting final judgment in favor of Columbus Steel Castings.
 {¶ 14} On cross-appeal, Columbus Steel Castings asserts the following three assignments of error:
 [1.] The trial court erred when it held that Plaintiff-Cross Appellant Columbus Steel Castings Company's ("Columbus Steel") Motion for Leave to Amend Columbus Steel's Answer to assert that Defendant-Appellant Transportation Transit *Page 6 
Associates LLC ("TTA") lacked legal standing to assert a counterclaim or a recoupment defense was moot.
 [2.] The trial court erred when it held that Columbus Steel's Motion in Limine to Preclude TTA from maintaining a separate counterclaim or a recoupment defense for lack of legal standing was moot.
 [3.] The trial court erred when it overruled Columbus Steel's Motion in Limine to Exclude TTA from introducing evidence of TTA's alleged damages because that evidence contradicted the sworn testimony of the corporate designee of TTA.
 {¶ 15} Without providing any authority to support its claim, in its appeal, TTA asserts that New York law applies in this case. Columbus Steel Castings agrees that New York law is applicable. Notwithstanding the parties' claims that New York law applies, we shall begin by examining what substantive law and procedural law properly should apply to this cause.[3]
 {¶ 16} In Schulke Radio Productions, Ltd. v. Midwestern BroadcastingCo. (1983), 6 Ohio St.3d 436, the Supreme Court of Ohio held:
 The law of the state chosen by the parties to govern their contractual rights and duties will be applied unless either the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or application of the law of the chosen state would be contrary to the fundamental policy of a state having a greater material interest in the issue than the chosen state and such state would be the state of the applicable law in the absence of a choice by the parties.
Id. at syllabus; see, also, Jarvis v. Ashland Oil, Inc. (1985),17 Ohio St.3d 189, syllabus; Restatement of the Law 2d, Conflict of Laws (1971), 561, Section 187. Cf. Auten v. Auten (N.Y. 1954), 308 N.Y. 155, 160,124 N.E.2d 99 (applying "center of gravity" or "grouping of *Page 7 
contacts" theory of conflict of law, which, instead of regarding as conclusive the parties' intention or place of making or performance, requires courts to lay emphasis upon the law of the place that has the most significant contacts with the matter in dispute).
 {¶ 17} The parties' purchase order agreement provides in part:
15. Governing Law
 This Purchase Order and any material relating thereto shall be governed by the laws of the state in which the Purchaser's office that issues the order is located.
 {¶ 18} The parties agree that TTA is a Delaware limited liability company with its principal place of business in the state of New York. Our review of the record shows that TTA Manufacturing, a division of Transportation Transit Associates, LLC, issued the purchase order and that TTA Manufacturing is situated in the state of New York. We therefore conclude that New York has a substantial relationship to the parties' agreement. And, as TTA's principal place of business is situated in the state of New York, there exists a reasonable basis for the parties' choice of law provision in their contract. Furthermore, after reviewing the record, we cannot conclude that Ohio would have a greater material interest in the parties' dispute than the interest of the parties' chosen state of New York. Accordingly, applying SchulkeRadio Productions, we reasonably could conclude that New York substantive law properly should apply to the parties' present dispute.
 {¶ 19} However, if we were to apply New York law, which the parties suggest is the governing law in this case, when determining whether New York substantive law properly should apply to the parties' dispute, a credible contrary conclusion could be reached. In Auten, the Court of Appeals of New York applied a "center of gravity" or "grouping of contacts" theory of conflict of laws. The Auten court instructed: *Page 8 
 * * * Under this theory, the courts, instead of regarding as conclusive the parties' intention or the place of making or performance, lay emphasis rather upon the law of the place "which has the most significant contacts with the matter in dispute." * * *
 Although this "grouping of contacts" theory may, perhaps, afford less certainty and predictability than the rigid general rules * * *, the merit of its approach is that it gives to the place "having the most interest in the problem" paramount control over the legal issues arising out of a particular factual context, thus allowing the forum to apply the policy of the jurisdiction "most intimately concerned with the outcome of [the] particular litigation." * * * Moreover, by stressing the significant contacts, it enables the court, not only to reflect the relative interests of the several jurisdictions involved * * * but also to give effect to the probable intention of the parties and consideration to "whether one rule or the other produces the best practical result". * * *
Id. at 160-161.
 {¶ 20} Here, applying Auten, an examination of the parties' contacts with Ohio and New York leads to a reasonable conclusion that Ohio substantive law properly could be applied to determine the impact and effect of the issues raised in this dispute. In the present case, the location of TTA's principal place of business in New York provides the primary nexus with New York, while the nexus with Ohio consists of many other key contacts. Specifically, Buckeye Steel, which initially agreed to manufacture components for TTA, had operations in Ohio; Columbus Steel Castings, which later purchased the assets of Buckeye Steel, undisputedly has its principal place of business in Columbus, Ohio; Buckeye Steel's alleged failure to perform under the agreement occurred in Ohio; Buckeye Steel's related bankruptcy proceedings have been litigated in federal courts situated in Ohio; and Columbus Steel Castings brought suit against TTA in an Ohio forum. Accordingly, if we were to apply Auten, we therefore reasonably could conclude that Ohio substantive law, not New York substantive law, properly could apply. *Page 9 
 {¶ 21} Despite our finding under Auten that Ohio substantive law reasonably could apply, we are nonetheless mindful that when considering what substantive law should apply, the parties' intention must be afforded some weight. See, e.g., Auten, at 161 (stating that "grouping of contacts" theory "enables the court, not only to reflect the relative interests of the several jurisdictions involved * * * but also to give effect to the probable intention of the parties"); Schulke RadioProductions, Ltd., at syllabus (holding that, absent certain exceptions, the law of the state chosen by the parties to govern their contractual rights and duties will be applied).
 {¶ 22} Here, we find that the language employed by the parties in their purchase order agreement shows a probable intention that New York substantive law should apply to the matter in dispute. Because the parties' agreement shows a probable intention for New York substantive law to be applied, and absent any evidence that the parties have failed to make an effective choice of the forum law to be applied, we therefore find that New York substantive law is applicable to the matter in dispute. See Jarvis, at paragraph one of the syllabus.
 {¶ 23} Additionally, because traditional choice of law principles provide that the law of the forum state governs on procedural matters,Keeton v. Hustler Magazine, Inc. (1984), 465 U.S. 770, 778,104 S.Ct. 1473, fn. 10; Lawson v. Valve-Trol Co. (1991), 81 Ohio App.3d 1, 4, jurisdictional motion overruled, 61 Ohio St.3d 1422; Restatement of the Law 2d, Conflict of Laws (1971), 350, Section 122, we also find that Ohio procedural law applies to this cause as Ohio is the forum in which this cause of action was brought. Cf. People v. Benson (N.Y.A.D.3, 1982), 88 A.D.2d 229, 231, 454 N.Y.S.2d 155 (observing that *Page 10 
"[traditionally, procedural and evidentiary issues are governed by the law of the forum (see, generally, Restatement, Conflict of Laws 2d, §§ 122, 138)").
 {¶ 24} Under Ohio law, appellate review of a lower court's granting of summary judgment is de novo. Mitnaul v. Fairmount PresbyterianChurch, 149 Ohio App.3d 769, 2002-Ohio-5833, at ¶ 27; Johnston v.Cochran, Franklin App. No. 06AP-1065, 2007-Ohio-4408, at ¶ 10. "`Denovo review means that this court uses the same standard that the trial court should have used, and we examine the evidence to determine whether as a matter of law no genuine issues exist for trial.'"Mitnaul, at ¶ 27, quoting Brewer v. Cleveland City Schools (1997),122 Ohio App.3d 378, citing Dupler v. Mansfield Journal (1980),64 Ohio St.2d 116, 119-120, certiorari denied (1981), 452 U.S. 962,101 S.Ct. 3111.
 {¶ 25} Summary judgment is proper when a movant for summary judgment demonstrates: (1) no genuine issue of material fact exists; (2) the movant is entitled to judgment as a matter of law; and (3) reasonable minds could come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence most strongly construed in its favor. Civ.R. 56; State ex rel. Grady v. State Emp. Relations Bd.
(1997), 78 Ohio St.3d 181, 183. Cf. N.Y. CPLR Rule 3212 (summary judgment motion).
 {¶ 26} Under Civ.R. 56(C), a movant bears the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record demonstrating the absence of a material fact. Dresher v. Burt (1996), 75 Ohio St.3d 280, 293. Once a movant discharges its initial burden, summary judgment is appropriate if the nonmoving party does not respond, by affidavit or as otherwise provided in Civ.R. 56, with specific facts showing that a genuine issue exists for trial. Dresher, at 293; Vahila v. Hall (1997), *Page 11 77 Ohio St.3d 421, 430; Civ.R. 56(E). Cf. GTF Marketing, Inc. v. ColonialAluminum Sales, Inc. (N.Y. 1985), 66 N.Y.2d 965, 967-968, 489 N.E.2d 755
(discussing summary judgment standard under New York law).
 {¶ 27} TTA's assignments of error assert that the trial court erred (1) by denying its motion for summary judgment, (2) by granting Columbus Steel Castings' motion for summary judgment, and (3) by granting final judgment in favor of Columbus Steel Castings. In its appeal, TTA contends that a single contract, namely, the purchase order between TTA Manufacturing and Buckeye Steel, governed TTA's and Buckeye Steel's business relationship; TTA properly exercised a right to recoupment before Columbus Steel purchased Buckeye Steel's assets; and TTA properly notified Columbus Steel Castings of its intention to deduct damages from any amount that was still due under the contract. Because TTA's assignments of error are interrelated, we shall jointly address them.
 {¶ 28} In its appeal, TTA claims, among other things, that the trial court erred in its application of N.Y. Uniform Commercial Code § 2-717, which TTA asserts affords relief to TTA as a matter of law.
 {¶ 29} N.Y. Uniform Commercial Code § 2-717 provides that "[t]he buyer on notifying the seller of his intention to do so may deduct all or any part of the damages resulting from any breach of the contract from any part of the price still due under the same contract." See, also, N.Y. Uniform Commercial Code § 1-201(26), effective July 1, 2001 (providing in part that "[a] person `notifies' or `gives' a notice or notification to another by taking such steps as may be reasonably required to inform the other in ordinary course whether or not such other actually comes to know of it"); N.Y. Uniform Commercial Code § 1-201(27), effective July 1, 2001 (providing in part that "[n]otice, knowledge or a notice or *Page 12 
notification received by an organization is effective for a particular transaction from the time when it is brought to the attention of the individual conducting that transaction, and in any event from the time when it would have been brought to his attention if the organization had exercised due diligence").
 {¶ 30} Official Comment No. 1 to N.Y. Uniform Commercial Code § 2-717 states that "[t]his section permits the buyer to deduct from the price damages resulting from any breach by the seller and does not limit the relief to cases of breach of warranty as did the prior uniform statutory provision." Official Comment No. 1 further provides: "To bring this provision into application the breach involved must be of the same contract under which the price in question is claimed to have been earned."
 {¶ 31} According to Official Comment No. 2 to N.Y. Uniform Commercial Code § 2-717, "[t]he buyer, however, must give notice of his intention to withhold all or part of the price if he wishes to avoid a default within the meaning of the section on insecurity and right to assurances." Official Comment No. 2 to N.Y. Uniform Commercial Code § 2-717 further provides: "In conformity with the general policies of this Article, no formality of notice is required and any language which reasonably indicates the buyer's reason for holding up his payment is sufficient."
 {¶ 32} Here, whether TTA took such steps as may have been reasonably required to inform Buckeye Steel or Columbus Steel Castings in ordinary course that it intended to exercise a right to recoupment under N.Y. Uniform Commercial Law § 2-717 is disputed by the parties and, therefore, at the very least, a genuine issue of material fact exists as to whether either party is entitled to summary judgment under N.Y. Uniform Commercial Law § 2-717. See, e.g., Panda Capital Corp. v. KopoInternatl., Inc. (N.Y.A.D.2, 1997), *Page 13 242 A.D.2d 690, 692-693, 662 N.Y.S.2d 584 (finding that, under the circumstances of that case, it was at the very least an issue of fact as to whether timely notice of breach was given).
 {¶ 33} Accordingly, TTA's claim that, as a matter of law, the trial court erred by not granting summary judgment to TTA based on N.Y. Uniform Commercial Law § 2-717 is unconvincing.
 {¶ 34} Generally, "recoupment" may be defined as, among other things, "[t]he right of a defendant to have the plaintiff's claim reduced or eliminated because of the plaintiff's breach of contract or duty in the same transaction." Black's Law Dictionary (8 Ed.2004) 1302. In Natl.Cash Register Co. v. Joseph (N.Y. 1949), 299 N.Y. 200, 86 N.E.2d 561, the Court of Appeals of New York explained:
 "Recoupment" means a deduction from a money claim through a process whereby cross demands arising out of the same transaction are allowed to compensate one another and the balance only to be recovered * * *. Of course, such a process does not allow one transaction to be offset against another, but only permits a transaction which is made the subject of suit by a plaintiff to be examined in all its aspects, and judgment to be rendered that does justice in view of the one transaction as a whole. * * *
Id. at 203. (Citations omitted.)
 {¶ 35} More recently, in Constantino v. New York (N.Y.Ct.Cl., 1979),99 Misc.2d 362, 415 N.Y.S.2d 966, the Court of Claims of New York stated:
 * * * Unlike a setoff, recoupment was required to arise out of the same set of transactions as the claim. * * * Further, unlike a counterclaim, recoupment does not seek damages in excess of sums already possessed by the defendant or in excess of those demanded by the complaint. It is manifestly Pro tanto a defensive use of a cause of action possessed by the defendant.
 * * * *Page 14 
 * * * The right to plead recoupment as a defense remains intact * * * notwithstanding the subsequent absorption of the common-law doctrines of setoff and recoupment by the present statutory definition of counterclaim. * * *
Id. at 365. (Citations omitted.)
 {¶ 36} A New York appellate court has also stated that "[i]n order to assert the defense of equitable recoupment, a party must have a legally subsisting cause of action upon which it could maintain an independent claim." Telmark, Inc. v. C R Farms, Inc. (N.Y.A.D.4, 1985),115 A.D.2d 966, 967, 497 N.Y.S.2d 536. (Citations omitted.) "Further, the defense of recoupment does not include a claim for damages purely consequential but is limited to allowance for diminution in the value of the subject matter of the contract[.]" Id. at 967.
 {¶ 37} Besides being an equitable defense under New York common law, recoupment also "has long been utilized in the bankruptcy context."In re Eyke (Bkrtcy.W.D.Mich., 2000), 246 B.R. 550, 557, citing In reGasmark Ltd. (C.A.5, 1999), 193 F.3d 371, 374, citing In re U.S.Abatement Corp (C.A.5, 1996), 79 F.3d 393, 398. Here, because Buckeye Steel's seeking of bankruptcy protection and the bankruptcy court's later approval of Columbus Steel Castings' purchase of the assets of Buckeye Steel and certain of its affiliates are relevant factual issues, we also shall consider bankruptcy principles in addition to New York law to determine whether, as TTA claims, the trial court erred when it in effect granted summary judgment in favor of Columbus Steel Castings by preventing TTA from asserting recoupment as an affirmative defense.
 {¶ 38} In In re Buckeye Steel Castings Co., Inc. (C.A.6 BAP, 2004),306 B.R. 186, a related matter to the instant appeal, the United States Bankruptcy Appellate Panel of the Sixth Circuit concluded: *Page 15 
 In the case at bar, [Columbus Steel Castings] desires an order from the bankruptcy court foreclosing TTA from employing the defense of set-off, though not recoupment, against it in any future litigation to recover the account receivable. Since the parties agree and acknowledge that the defense of set-off is prohibited by the provisions of the asset sale order, it seems unlikely that TTA will risk contempt by raising that defense in future litigation. If TTA should, in some future litigation, plead the defense of recoupment, CSC and its attorneys will be on hand to ensure that the trial court makes the necessary distinctions and allows only a recoupment, if proper, and not a set-off. * * *
Id. at 191.
 {¶ 39} Based on the conclusion of the bankruptcy appellate panel inIn re Buckeye Steel Castings Co., in its answer to Columbus Steel Castings' complaint, TTA therefore properly could raise recoupment as an affirmative defense before the common pleas court. See, generally,Weiss v. Manfredi (N.Y. 1994), 83 N.Y.2d 974, 976, 639 N.E.2d 1122, reargument denied, 84 N.Y.2d 848, 641 N.E.2d 155 (explaining that "the settled doctrine of collateral estoppel * * * bars a party from relitigating in a subsequent proceeding an issue clearly raised in a prior proceeding and decided against that party where the party to be precluded had a full and fair opportunity to contest the prior determination"); People v. Aguilera (N.Y. 1993), 82 N.Y.2d 23, 29,623 N.E.2d 519 (explaining that "[collateral estoppel, or `issue preclusion' * * * is a common-law doctrine rooted in civil litigation that, when applied, prevents a party from relitigating an issue decided against it in a prior proceeding"). Cf. State ex rel. Kincaid v. AllenRefractories, Co., 114 Ohio St.3d 129, 2007-Ohio-3758, at ¶ 8, quotingOffice of Consumers' Counsel v. Pub. Util. Comm. (1985),16 Ohio St.3d 9, 10 (stating that "[a] derivative of res judicata, collateral estoppel bars `the relitigation of a point of law or fact that was at issue in a former action between the same parties and was passed upon by a court of competent jurisdiction'"). *Page 16 
 {¶ 40} Discussing the common law doctrine of recoupment in the bankruptcy context, the United States Court of Appeals for the Third Circuit in In re Univ. Med. Ctr. (C.A.3, 1992), 973 F.2d 1065, has explained:
 The Bankruptcy Code does not contain a recoupment provision. The common law doctrine of recoupment provides an exception to setoff in bankruptcy cases. Recoupment "is the setting up of a demand arising from the same transaction as the plaintiff's claim or cause of action, strictly for the purpose of abatement or reduction of such claim." 4 COLLIER ON BANKRUPTCY § 553.03, at 553-15-17 (emphasis added). This doctrine is justified on the grounds that "where the creditor's claim against the debtor arises from the same transaction as the debtor's claim, it is essentially a defense to the debtor's claim against the creditor rather than a mutual obligation, and application of the limitations on setoff in bankruptcy would be inequitable." [Lee v. Schweiker (C.A.3, 1984), 739 F.2d 870, 875]. Thus, so long as the creditor's claim arises out of the identical transaction as the debtor's, that claim may be offset against the debt owed to the debtor, without concern for the limitations put on the doctrine of setoff by Code section 553. [In re Davidovich (C.A.10, 1990), 901 F.2d 1533, 1537]. In the bankruptcy context, recoupment has often been applied where the relevant claims arise out of a single contract "that provide[s] for advance payments based on estimates of what ultimately would be owed, subject to later correction." In re B L Oil Co., 782 F.2d 155, 157 (10th Cir.1986). However, an express contractual right is not necessary to effect a recoupment. See In re Holford, 896 F.2d 176, 178 (5th Cir. 1990). Nor does the fact that a contract exists between the debtor and creditor automatically enable the creditor to effect a recoupment.
Id. at 1079-1080. See, also, Ferguson v. Lion Holdings, Inc. (S.D.N.Y., 2004), 312 F.Supp.2d 484, 502-503, reconsideration denied, (S.D.N.Y., June 8, 2004), United States District Court for the Southern District of New York Case Nos. 02 Civ. 4258 (PKL), 02 Civ. 4261 (PKL) (discussing doctrines of equitable recoupment and setoff).
 {¶ 41} The United States Bankruptcy Court for the District of New Jersey also has stated: *Page 17 
 Setoff involves a mutuality of obligation which arises from separate transactions. * * * Recoupment, on the other hand, does not require a mutuality of obligation, but rather countervailing claims or demands arising out of the same transaction under which the initial claim was asserted. * * * Essentially, the distinction between the two is whether the claim arises out of the same or different transactions. * * * Thus, where a claim arises from the same transaction, the proper characterization of the action is recoupment.
In re Hiler (Bkrtcy.D.N.J., 1989), 99 B.R. 238, 241-242. (Citations omitted.)
 {¶ 42} "[T]he key question in most recoupment cases is whether the relevant obligations constitute part of the `same transaction.' Courts have avoided setting out a precise definition of the `same transaction' requirements, preferring instead to focus on the particular facts of each case." Collier on Bankruptcy (15 Ed.2007), 553-101, ¶ 553.10[1]. (Footnote omitted.)
 {¶ 43} Collier on Bankruptcy has observed:
 In general, courts have applied one of two main approaches in deciding whether the obligations in question satisfy the "same transaction" requirement. To begin with, some courts have defined the requirement through use of the "logical relationship test" articulated by the Supreme Court in Moore v. New Cotton Exchange [(1926), 270 U.S. 593, 610, 46 S.Ct. 367], in which the Court stated that the concept of a "`[transaction' is [one] of flexible meaning. It may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship." Applying this standard, courts have permitted a variety of obligations to be recouped against each other, requiring only that the obligations be sufficiently interconnected so that it would be unjust to insist that one party fulfill its obligation without requiring the same of the other party. The leading case approving this approach is the Ninth Circuit's decision in Newbery Corp. v. Fireman's Fund Insurance Co. (C.A.9, 1996), 95 F.3d 1392].
 In contrast, other courts have applied the more restrictive "integrated transaction test." Under this test, the obligations in question must "arise out of a single integrated transaction so *Page 18 
that it would be inequitable for the debtor to enjoy the benefits of the transaction without also meeting its obligations." The leading case applying this approach is the Third Circuit's decision in University Medical Center v. Sullivan (In re University Medical Center) [(C.A.3, 1999), 973 F.2d 1065]. Although both approaches require evaluation of whether it would be equitable to insist that one party fulfill its obligations without requiring the other party to do so, the main difference between the two lies in the degree of the interconnectedness required with respect to the relevant obligations. Under the integrated transaction test, even obligations arising under a single contract may not qualify if the court concludes that they arise from "multiple transactions" under the contract. * * *
Id. at 553-103 to 553-104.
 {¶ 44} Our research shows that the United States Court of Appeals for the Sixth Circuit does not appear to have expressly adopted either "the logical relationship test" or "the integrated transaction test," and lower courts within the Sixth Circuit have applied both tests. See, e.g., In re Eyke, supra, at 558 (applying "logical relationship" test outlined in Newbery Corp. v. Firemen's Fund Ins. Co. [C.A.9, 1996],95 F.3d 1392); In re Sigman (Bkrtcy.S.D.Ohio, 2001), 270 B.R. 858, 862
(appearing to apply "integrated transaction test").
 {¶ 45} In the present case, the trial court correctly observed that, as a general matter, in the bankruptcy context the recoupment doctrine is a limited one and should be narrowly construed as it violates the basic bankruptcy principle of equal distribution to creditors. SeeIn re Peterson Distributing, Inc. (C.A.10, 1996), 82 F.3d 956, 959-960;In re McMahon (C.A.2, 1997), 129 F.3d 93, 97; In re Public Service Co.of New Hampshire (Bkrtcy.D.N.H., 1989), 107 B.R. 441, 444.
 {¶ 46} Relying in part on In re Univ. Med. Ctr. and In reMalinowski (C.A.2, 1998), 156 F.3d 131, and without expressly classifying which test it was using, the trial court *Page 19 
applied the "integrated transaction test" when it determined that TTA was precluded from asserting recoupment as an affirmative defense because the purchase order agreement constituted one contract with multiple shipments, and the purchase order agreement established separate and distinct remedies for discrete portions of the transactions.
 {¶ 47} In applying the "integrated transaction test," however, the trial court failed to evaluate whether it would be equitable to insist that one party fulfill its obligations without requiring the other party to do so as is required under the "integrated transaction test." See, e.g., In re Univ. Med. Ctr., at 1081 (stating that "both debts must arise out of a single integrated transaction so that it would be inequitable for the debtor to enjoy the benefits of that transaction without also meeting its obligations"). Cf. Natl. Cash RegisterCo., at 203 (stating that recoupment "permits a transaction which is made the subject of suit by a plaintiff to be examined in all its aspects, and judgment to be rendered that does justice in view of the one transaction as a whole"); Newbery Corp., at 1403, quoting In reUniv. Med. Ctr, at 1081 (agreeing with the Third Circuit's observation that "courts should apply the recoupment doctrine in bankruptcy cases only when `it would . . . be inequitable for the debtor to enjoy the benefits of that transaction without meeting its obligations'"). Absent such analysis, we therefore cannot conclude that the trial court properly applied the "integrated transaction test." We further observe that the trial court made no mention of "the logical relationship test" as applied by the Ninth Circuit in Newbery, which one treatise has concluded is the better approach.[4] See Collier on Bankruptcy, at 553-104 to 553-105. *Page 20 
 {¶ 48} Accordingly, for the reasons set forth above, we overrule TTA's first assignment of error, which asserts the trial court erred as a matter of law by denying summary judgment in favor of TTA. However, because the trial court incompletely applied the "integrated transaction test" when it precluded TTA from asserting recoupment as a defense, and because, as a consequence, the trial court therefore erred as a matter of law by granting summary judgment in favor of Columbus Steel Castings, we sustain TTA's second and third assignments of error that assert the trial court erred as a matter of law by precluding TTA from asserting recoupment as a defense and by granting final judgment in favor of Columbus Steel Castings.
 {¶ 49} Having disposed of all three of appellant's assignments of error, we shall now consider Collumbus Steels' assignments of error.
 {¶ 50} On cross-appeal, in its second assignment of error, Columbus Steel Castings asserts: "The trial court erred when it held that Columbus Steel's Motion in Limine to Preclude TTA from maintaining a separate counterclaim or a recoupment defense for lack of legal standing was moot."
 {¶ 51} Columbus Steel Castings mischaracterizes the trial court's judgment. In its judgment, the trial court "sustained" Columbus Castings' motion in limine to preclude TTA *Page 21 
from asserting its defense or counterclaim. The trial court did not, as Columbus Steel Castings suggests, deny as moot Columbus Steel Castings' motion in limine to preclude TTA from maintaining a separate counterclaim or asserting the defense of recoupment for lack of standing.
 {¶ 52} Here, the issue of whether TTA lacked standing was raised by Columbus Steel Castings to support its motion in limine that sought to estop TTA from asserting a counterclaim or the affirmative defense of recoupment. After applying the "integrated transaction test," as defined in In re Univ. Med. Ctr., supra, and concluding that, as a matter of law, TTA was precluded from asserting recoupment as an affirmative defense, the trial court determined that it did not need to determine whether TTA was precluded from asserting recoupment under an alternate theory, namely lack of standing. See, generally, Black's Law Dictionary (8 Ed.Rev.2004) 1029 (defining "moot" as, among other things, "[h]aving no practical significance; hypothetical or academic").
 {¶ 53} Although it is unorthodox for the trial court to have addressed the substantive elements of TTA's recoupment defense before addressing whether TTA had the right to make a legal claim or seek judicial enforcement of its affirmative defense, because the trial court ultimately granted Columbus Steel Castings' motion in limine to preclude TTA from asserting its defense or counterclaim, we cannot find that Columbus Steel Castings was prejudiced by the trial court's failure to address the theory that Columbus Steel Castings advanced in support of its motion.
 {¶ 54} For the reasons set forth above, we therefore overrule Columbus Steel Castings' second assignment of error on cross-appeal. *Page 22 
 {¶ 55} In its first assignment of error on cross-appeal, Columbus Steel Castings asserts that the trial court erred when it held that Columbus Steel Castings' motion for leave to amend instanter its answer to TTA's counterclaim was moot. In its motion, Columbus Steel Castings sought to add as an affirmative defense a claim that TTA lacked standing or capacity, or both, to bring its action or maintain a recoupment defense under Ohio law.
 {¶ 56} Civ.R. 15(A) provides in part that "[l]eave of court [to amend] a pleading shall be freely given when justice so requires." "In considering a plaintiff's request for leave to amend, `a trial court's "primary consideration is whether there is actual prejudice to the defendants because of the delay."'" Darby v. A-Best Products Co.,102 Ohio St.3d 410, 2004-Ohio-3720, at ¶ 20, certiorari denied (2005),543 U.S. 1146, 125 S.Ct. 1297, quoting Helman v. EPL Prolong, Inc. (2000),139 Ohio App.3d 231, 251, citing Schweizer v. Riverside MethodistHosp. (1996), 108 Ohio App.3d 539, 546, dismissed, appeal not allowed by, 76 Ohio St.3d 1406.
 {¶ 57} An appellate court's role in reviewing a trial court's ruling regarding a motion for leave to amend is to determine whether a trial court's decision constituted an abuse of discretion. Fed. Mgmt. Co. v.Coopers Lybrand (2000), 137 Ohio App.3d 366, 378, appeal not allowed by, 90 Ohio St.3d 1424, citing Wilmington Steel Products, Inc. v.Cleveland Elec. Illuminating Co. (1991), 60 Ohio St.3d 120, 122. When applying an abuse-of-discretion standard, an appellate court may not substitute its judgment for that of the trial court. Berk v.Matthews (1990), 53 Ohio St.3d 161, 169; Stockdale v. Baba,153 Ohio App.3d 712, 2003-Ohio-4366, at ¶ 54, citing Berk, at 169; State v.Congrove, Franklin App. No. 06AP-1129, 2007-Ohio-3323, at ¶ 9. *Page 23 
 {¶ 58} "The term `abuse of discretion' implies an unreasonable, arbitrary or unconscionable attitude." Congrove, at ¶ 9, citingDayton ex rel. Scandrick v. McGee (1981), 67 Ohio St.2d 356, 359. An unreasonable decision is one that is unsupported by a sound reasoning process. AAAA Enterprises, Inc. v. River Place Community UrbanRedevelopment Corp. (1990), 50 Ohio St.3d 157, 161; see, also,Congrove, at ¶ 9. An arbitrary attitude, on the other hand, is an attitude that is "`without adequate determining principle; * * * not governed by any fixed rules or standard.'" Scandrick, at 359, quoting Black's Law Dictionary (5 Ed.); see, also, Congrove, at ¶ 9.
 {¶ 59} Here, after finding that TTA was precluded from asserting its recoupment defense or its counterclaim under the "integrated transaction test," the trial court denied as moot Columbus Steel Castings' motion for leave to amend instanter its answer to TTA's counterclaim. Because, as discussed above, the trial court erred when it found, as a matter of law, that TTA was precluded from asserting the affirmative defense of recoupment, and because the trial court relied on this incorrect finding to support its finding of mootness, we conclude that the trial court prejudicially erred by finding that Columbus Steel Castings' motion for leave to amend its answer was moot.
 {¶ 60} In State v. Peagler (1996), 76 Ohio St.3d 496, the Supreme Court of Ohio recognized that App.R. 12(A)(2) provides an appellate court with discretion to decide whether to address an issue not briefed or raised below. Id. at 499. The Peagler court nonetheless cautioned:
 * * * Although this rule allows a court of appeals discretion in deciding to address an issue not briefed or raised below, the court of appeals must base any factual conclusions reached upon evidence that exists in the record. * * * Similarly, there must be sufficient evidentiary basis in the record before the reviewing court upon which it can decide a particular legal *Page 24 issue. * * * Fairness, which is required for the proper operation of the adversary system of justice, requires at least that the parties be allowed in the trial court the opportunity to present evidence that would support or refute the legal theory addressed by the court of appeals.
Id. (Citations omitted; footnote omitted; emphasis sic.)
 {¶ 61} Here, in support of its motion, Columbus Steel Castings presented the trial court with a particular legal issue, namely, whether R.C. 1705.58 precluded TTA from asserting a counterclaim or raising the affirmative defense of recoupment. In the trial court, both parties were given an opportunity to present arguments concerning this matter. Because the trial court found this legal issue was moot, the trial court did not render a decision as to this issue. However, because we find a sufficient evidentiary basis in the record, even though the trial court did not render a decision as to this issue, we shall nonetheless consider Columbus Steel Castings' contention that R.C. 1705.58 precludes TTA from asserting a counterclaim or raising recoupment as an affirmative defense.
 {¶ 62} R.C. 1705.58 provides in part:
 (A) A foreign limited liability company transacting business in this state may not maintain any action or proceeding in any court of this state until it has registered in this state in accordance with sections 1705.53 to 1705.58 of the Revised Code.
 (B) The failure of a foreign limited liability company to register in this state in accordance with sections 1705.53 to 1705.58 of the Revised Code does not impair the validity of any contract or act of the company or prevent it from defending any action or proceeding in any court of this state.
 {¶ 63} To fully address Columbus Steel Castings' claim, we must first resolve whether R.C. 1705.58 is substantive law or procedural law. As discussed above, we have already determined that New York law provides the substantive law in this dispute, while Ohio law governs procedural matters. *Page 25 
 {¶ 64} "Substantive law" may be defined as "[t]he part of the law that creates, defines, and regulates the rights, duties, and powers of parties[,]" Black's Law Dictionary (8. Ed. Rev.2004) 1470, while "procedural law" may be defined as "[t]he rules that prescribe the steps for having a right or duty judicially enforced, as opposed to the law that defines the specific rights or duties themselves." Id. at 1241.
 {¶ 65} Such definitions, however, presuppose that the demarcation between substantive law and procedural law is mutually exclusive. See, e.g., Laudenberger v. Port Auth. of Allegheny Cty. (1981), 496 Pa. 52,56-57, 436 A.2d 147, appeal dismissed (1982) sub. nom. Bucheit v.Laudenberger (1982), 456 U.S. 940, 102 S.Ct. 2002. "Procedural law is undeniably an integral thread in the fabric of the law. As threads are woven into cloth, so does procedural law interplay with substantive law. Together, they create a cohesive whole. However, it is this very proximity which often leads to difficulty in identifying one thread as procedural and another as substantive." Laudenberger, at 57. "`The tacit assumption that the precise point at which the line between the two is to be drawn is the same for all purposes . . . is of course connected with the other assumptions . . . namely, that the "line" is to be "discovered" rather than "drawn" and that it can be located without keeping in mind the purpose of the classification. If once we recognize that the "line" can be drawn only in the light of the purpose in view, it cannot be assumed without discussion that as our purposes change the line can be drawn at precisely the same point.'" Id. at 57-58, quoting W. Cook, Logical and Legal Bases of the Conflict of Law (1942) 158-159.
 {¶ 66} R.C. 1705.58(A) provides in part that "[a] foreign limited liability company transacting business in this state may not maintain any action or proceeding in any court of this state until it has registered in this state[.]" The purpose of R.C. 1705.58 is the *Page 26 
prescribing of steps that a foreign limited liability company must take to have a right or duty judicially enforced in Ohio.
 {¶ 67} "`[T]he word "right" is one of the most deceptive of pitfalls; it is so easy to slip from a qualified meaning in the premise to an unqualified one in the conclusion. Most rights are qualified.'"Lorain Journal Co. v. U.S. (1951), 342 U.S. 143, 155, 72 S.Ct. 181, quoting American Bank Trust Co. v. Fed. Reserve Bank of Atlanta
(1921), 256 U.S. 350, 358, 41 S.Ct. 499.
 {¶ 68} Although R.C. 1705.58 prescribes the steps that a foreign limited liability company must take to have a right or duty judicially enforced, that section does not per se limit the specific rights or duties of foreign limited liability companies. For example, under division (B) of R.C. 1705.58, the failure of a foreign limited liability company to register in Ohio in accordance with sections R.C. 1705.53 to1705.58 does not impair the validity of a contract into which a foreign limited liability company may have entered, and the failure to register does not prevent a foreign limited liability company from defending any action or proceeding in an Ohio court. We therefore find that R.C.1705.58 is a law that prescribes the steps for having a right or duty judicially enforced, rather than a law that defines the specific rights or duties themselves. Accordingly, we conclude that R.C. 1705.58
constitutes a procedural law. Therefore, Ohio law applies.
 {¶ 69} Here, TTA, a foreign limited liability company, does not dispute that it is not registered in this state. TTA claims, however, that R.C. 1703.02, which provides in part that "[s]ections 1703.01 to1703.31 of the Revised Code do not apply to corporations engaged in this state solely in interstate commerce," provides an exception that would permit TTA to maintain an action in Ohio without first registering in this state. TTA's reliance on R.C. *Page 27 1703.02 is misplaced. By its express terms, R.C. 1703.02 pertains to foreign corporations, not foreign limited liability companies.
 {¶ 70} Under R.C. 1705.58(A), a foreign limited liability company transacting business in this state is prohibited from "maintaining] any action or proceeding in any court of this state until it has registered in this state[.]" Such a provision, however, is at variance with Civ.R. 13(A), which requires in part that "[a] pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction." See, also,Osborn Co. v. Ohio Dept. of Adm. Serv. (1992), 80 Ohio App.3d 205, 210, dismissed, jurisdictional motion overruled by, 65 Ohio St.3d 1441, citing Interstate Steel Erectors, Inc. v. H. L. Wolff, Inc. (1984),17 Ohio App.3d 173; Quintus v. McClure (1987), 41 Ohio App.3d 402;Broadway Mgt, Inc. v. Godale (1977), 55 Ohio App.2d 49 (stating that "[f]ailure to assert a compulsory counterclaim is a bar to any subsequent attempt to pursue same by application of the doctrine ofres judicata").
 {¶ 71} Section 5(B), Article IV, of the Ohio Constitution provides in part:
 The Supreme Court shall prescribe rules governing practice and procedure in all courts of the state, which rules shall not abridge, enlarge, or modify any substantive right. * * * All laws in conflict with such rules shall be of no further force or effect after such rules have taken effect.[5] *Page 28 
See, also, Rockey v. 84 Lumber Co. (1993), 66 Ohio St.3d 221, paragraph two of the syllabus (holding that "[t]he Ohio Rules of Civil Procedure, which were promulgated by the Supreme Court pursuant to Section 5(B), Article IV of the Ohio Constitution, must control over subsequently enacted inconsistent statutes purporting to govern procedural matters").
 {¶ 72} Here, R.C. 1705.58(A), effective July 1, 1994, conflicts with the requirement of Civ.R 13(A), which was adopted prior to 1994, that requires compulsory counterclaims to be pleaded. Construing Section5(B), Article IV, Ohio Constitution, and finding that R.C. 1705.58(A) is at variance with Civ.R. 13(A), which the Supreme Court of Ohio has prescribed as governing civil practice in all courts of this state, we therefore find that R.C. 1705.58(A) cannot bar TTA from asserting a compulsory counterclaim under Civ.R. 13(A) in its defense of the action that Columbus Steel Castings brought against it.
 {¶ 73} Moreover, insofar as equitable recoupment is an affirmative defense and the United States Bankruptcy Appellate Panel of the Sixth Circuit has permitted TTA to assert recoupment as an affirmative defense, see In re Buckeye Steel Castings Co., Inc., supra, we also find that under R.C. 1705.58(B) TTA properly could raise the affirmative defense of equitable recoupment in its answer as part of its defense against the lawsuit that Columbus *Page 29 
Steel Castings brought against TTA. See, generally, R.C. 1705.58(B) (permitting a foreign limited liability company to defend any action or proceeding in state court).
 {¶ 74} Accordingly, for the reasons set forth above, we overrule Columbus Steel Castings' first assignment of error on cross-appeal.
 {¶ 75} In its third assignment of error on cross-appeal, Columbus Steel Castings contends that the trial court erred by overruling its motion in limine to exclude TTA from introducing evidence that contradicted the sworn deposition testimony of TTA's corporate designee.
 {¶ 76} Civ.R. 30(B)(5) provides:
 A party, in the party's notice, may name as the deponent a public or private corporation, a partnership, or an association and designate with reasonable particularity the matters on which examination is requested. The organization so named shall choose one or more of its proper employees, officers, agents, or other persons duly authorized to testify on its behalf. The persons so designated shall testify as to matters known or available to the organization. Division (B)(5) does not preclude taking a deposition by any other procedure authorized in these rules.
 {¶ 77} Nothing in the plain language of Civ.R. 30(B)(5) prevents an opposing party at trial from examining a corporate designee about matters that were outside the scope of the deposition. Moreover, we find nothing in the plain language of Civ.R. 30(B)(5) that prevents a corporation from explaining, expanding, or contradicting previous testimony of a corporate designee. While TTA is bound by the deposition testimony of its corporate designee, such testimony does not constitute a judicial admission. TTA's corporate designee's deposition testimony is evidence which, like other deposition testimony, can be contradicted and used for impeachment purposes. See, generally, Civ.R. 32(A)(1) and (2). Cf. Industrial Hard Chrome, Ltd., IHC v. Hetran, Inc. (N.D.Ill, 2000),92 F.Supp.2d 786, 791 *Page 30 
(construing Fed.R.Civ.P. 30[b][6]) (stating that "[w]hile [the corporations] are bound by the testimony given by their designated representative during the Rule 30(b)(6) deposition, such testimony is not a judicial admission that ultimately decides the issue. The testimony given at a Rule 30(b)(6) deposition is evidence which, like any other deposition testimony, can be contradicted and used for impeachment purposes"); W.R. Grace Co. v. Viskase Corp. (N.D.Ill., Oct. 15, 1991), Northern Illinois, Eastern Div., Case No. 90 C 5383;[6] U.S. v. Taylor (M.D.N.C, 1996), 166 F.R.D. 356, 362, fn. 6; see, also, staff notes to Civ.R. 30 (stating in part that "Rule 30(B)(5) is a slight variant of proposed Federal Rule 30(b)(6)]. It combines the proposed Federal Rule and a portion of § 2317.07, R.C.").
 {¶ 78} For the reasons set forth above, we therefore overrule Columbus Steel Castings' third assignment of error on cross-appeal.
 {¶ 79} Accordingly, having overruled appellant's first assignment of error and sustained appellant's second and third assignments of error, and having overruled all three of cross-appellant's assignments of error, we reverse the judgment of the Franklin County Court of Common Pleas. We also remand the matter to that court for further proceedings in accordance with law and consistent with this opinion.
 Judgment reversed; cause remanded. *Page 31 
 FRENCH and GREY, JJ., concur.
GREY, J., retired of the Fourth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.
[1] But, see, generally, Section 362, Title 11, U.S. Code (automatic stay in bankruptcy proceedings).
[2] Judgment Entry, at 1-2. According to the trial court's judgment, besides recoupment, these other affirmative defenses that were raised by TTA in its answer were extinguished in Buckeye Steel's bankruptcy action: (1) Columbus Steel Castings is not the real party in interest; (2) Alstom, or an Alstom-related entity, satisfied TTA's obligation; (3) Columbus Steel Castings' claim was barred by the doctrines of estoppel and waiver; (4) Columbus Steel Castings failed to join an indispensable party, namely Alstom; and (5) Columbus Steel Castings' service of process was insufficient. (Answer, at 3.) In this appeal, no party has challenged the trial court's determination that these remaining affirmative defenses were extinguished in Buckeye Steel's bankruptcy action.
In its judgment, the trial court also found that "there is no just reason for delay." See, generally, Civ.R. 54(B) (providing in part that a "court may enter final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay").
In State ex rel. A D Ltd. Partnership v. Keefe (1996),77 Ohio St.3d 50, 56, reconsideration denied, 77 Ohio St.3d 1483, the Supreme Court of Ohio explained: "Civ.R. 54(B) must be followed when a case involves multiple claims and/or multiple parties. * * * An order adjudicating one or more but fewer than all the claims or the rights and liabilities of fewer than all the parties must meet the requirements of R.C. 2505.02
and Civ.R. 54(B) in order to be final and appealable." Id. at 56. (Citations omitted.) See R.C. 2505.02(B)(1) (providing that "[a]n order is a final order that may be reviewed, affirmed, modified, or reversed, with or without retrial, when it is one of the following: * * * [a]n order that affects a substantial right in an action that in effect determines the action and prevents a judgment"); see, also, Yavitch Palmer Co., L.P.A. v. U.S. Four, Inc., Franklin App. No. 05AP-294,2005-Ohio-5800, at ¶ 8, appeal not allowed (2006), 108 Ohio St.3d 1511,2006-Ohio-1329, citing Hamilton Cty. Bd. of Mental Retardation Developmental Disabilities v. Professionals Guild of Ohio (1989),46 Ohio St.3d 147, 153; Raphael v. Brigham (Nov. 9, 2000), Franklin App. No. 00AP-328 (stating that "[f]or an order to determine the action and prevent a judgment for the party appealing, it must dispose of the whole merits of the cause or some separate and distinct branch thereof and leave nothing for the determination of the court"); Farmers MarketDrive-In Shopping Ctrs. v. Magana, Franklin App. No. 06AP-532,2007-Ohio-2653, at ¶ 12-14 (discussing R.C. 2505.02 and Civ.R. 54[B]).
[3] See, generally, Black's Law Dictionary (8 Ed.Rev. 2004) 1470 (defining "substantive law"); id. at 1241 (defining "procedural law").
[4] The "integrated transaction test" as defined and applied in In reUniv. Med. Ctr., supra, has been criticized because "the test may be used to deny recoupment in virtually every case." Collier on Bankruptcy, at 553-104. As Collier on Bankruptcy states:
 The main difficulty with the integrated transaction test is that, as the Third Circuit defined and applied the test in University Medical Center, the test may be used to deny recoupment in virtually every case. Specifically rejecting the logical relationship standard, the court concluded that, as long as the amount of the relevant obligations sought to be recouped may be "independently determinable," recoupment may be denied. The specific problem with this approach, however, is that corresponding obligations are always "independently determinable" to some degree; otherwise there would be no occasion to reduce one on account of the other. In addition, application of the Third Circuit's test would deny recoupment in situations in which the Supreme Court has indicated that it is appropriate. Accordingly, the better approach is the Supreme Court's logical relationship test as applied by the Ninth Circuit in Newbery.
Collier on Bankruptcy, at 553-104 to 553-105. (Footnotes omitted.)
[5] Editor's Comments to Section 5(B), Article IV, Ohio Constitution, state in part:
 Rules of practice and procedure may "not abridge, enlarge, or modify any substantive right." To the extent the rules are non-substantive, § 5(B) provides that they supersede any conflicting statutes. Alexander v Buckeye Pipeline Co., 49 OS(2d) 158, 359 NE(2d) 702 (1977). If, however, a rule of practice and procedure expands, restricts, or amends a substantive right in any way, the conflicting statute is not superseded by the rule and the statute controls. Boyer v. Boyer, 46 OS(2d) 83, 346 NE(2d) 286 (1976); State v Westbrook, 47 App(2d) 211, 353 NE(2d) 637
(Franklin 1975). Note that a statute is not superseded unless it conflicts with a non-substantive rule of practice and procedure adopted under § 5(B), so that statutes which supplement or complement the rules are still permitted. Also, it is important to distinguish between rules of practice and procedure adopted under § 5(B) and rules of superintendence adopted under § 5(A)(1) — the former override conflicting statutes, but the latter do not. State v Smith, 47 App(2d) 317, 354 NE(2d) 699 (Cuyahoga 1976). Finally, note that local court rules are permitted under this section provided they are consistent with the rules of practice and procedure.
Editors Comments, Section 5(B), Article IV, Ohio Constitution, Baldwin's Ohio Revised Code Annotated (2004), 129.
[6] In W.R. Grace Co., the United States District Court for Northern Illinois, Eastern Division, stated:
 It is true that a corporation is "bound" by its Rule 30(b)(6) testimony, in the same sense that any individual deposed under Rule 30(b)(1) would be "bound" by his or her testimony. All this means is that the witness has committed to a position at a particular point in time. It does not mean that the witness has made a judicial admission that formally and finally decides an issue. Deposition testimony is simply evidence, nothing more. Evidence may be explained or contradicted. Judicial admissions, on the other hand, may not be contradicted. Brown Root, Inc. v. American Home Assur. Co., 353 F.2d 113 (5th Cir. 1965), cert. denied, 384 U.S. 943 (1966).
Id. (Footnote omitted.) *Page 1