[Cite as *Columbus Steel Castings Co. v. Transp. & Transit Assocs., L.L.C.*, 2014-Ohio-272.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Columbus Steel Castings Company, | : | |
| Plaintiff-Appellee, | : | No. 12AP-970 |
| | | (C.P.C. No. 04CV-13504) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| Transportation & Transit Associates, LLC, | : | |
| | : | |
| Defendant-Appellant. | : | |
| | : | |

D E C I S I O N

Rendered on January 28, 2014

*Yarger Radel & Pentz, LLC*, *Jonathon M. Yarger*, *Victor D. Radel* and *Andrew J. Yarger*, for appellee.

*Luper Neidenthal & Logan*, *David M. Scott* and *Melissa A. Izenson*, for appellant.

APPEAL from the Franklin County Court of Common Pleas

O'GRADY, J.

{¶ 1} Defendant-appellant, Transportation & Transit Associates, LLC, appeals from the February 9 and October 18, 2012 judgments of the Franklin County Court of Common Pleas in favor of plaintiff-appellee, Columbus Steel Castings Company. For the reasons that follow, we affirm.

I. FACTS AND PROCEDURAL HISTORY

{¶ 2} This matter stems from a September 2000 purchase order where Buckeye Steel Castings Company, Inc. ("Buckeye Steel") agreed to manufacture, sell, and deliver truck components to Transportation & Transit Associates, LLC ("TTA") for the

manufacture of train cars.[1]  Buckeye Steel made 155 separate deliveries of parts to TTA, and sent TTA invoices for each delivery and associated freight costs.  TTA accepted and paid for 134 deliveries, but failed to pay Buckeye Steel for 21 deliveries and freight charges made between September 3, and November 11, 2002.

{¶ 3}  In December 2002, Buckeye Steel commenced Chapter 11 bankruptcy proceedings.  After approval from the bankruptcy court, Buckeye Steel then entered into an asset purchase agreement with Columbus Steel Castings Company ("CSC") under the U.S. Bankruptcy Code.  Under the agreement, CSC would buy the assets, including accounts receivable, "whether created prior or subsequent to the filing of the * * * [c]hapter 11 case[s]."  (R. 7, Complaint, ¶ 17.)  This agreement included the purchase of an account receivable allegedly owed to Buckeye Steel by TTA.  The sale order enjoined all persons from taking any action against CSC for recovery on any claim they might have against Buckeye Steel in respect to the assets sold.

{¶ 4}  After the sale was final, CSC demanded payment from TTA of the account receivable.  TTA refused, contending it had a right of recoupment that exceeded the account receivable at issue.  Specifically, TTA indicated Buckeye Steel breached its contract to supply parts and TTA suffered damages as a result.  TTA filed a proof of claim in the bankruptcy proceeding for breach of contract to recoup this amount, less the amount of the receivable owed to Buckeye Steel.  *In re Buckeye Steel Castings Co., Inc.*, 306 B.R. 186, 188 (6th Cir.BAP Ohio 2004).

{¶ 5}  CSC filed a motion in the bankruptcy court to enforce the sale order—specifically, to prohibit TTA from seeking recovery on a claim that arose out of TTA's relationship with Buckeye Steel.  CSC also moved the bankruptcy court to compel TTA to pay the account receivable.  At the motion hearing, CSC withdrew its demand for payment and, instead, sought a determination that the sale order enjoined TTA from enforcing its defense to the account receivable.  TTA indicated it applied the recoupment amount in its proof of claim and waived its right to increase the amount of its claim if the defense of recoupment was denied in any court.  In July 2003, the bankruptcy court dismissed CSC's motion for lack of subject-matter jurisdiction.  CSC appealed the

---

[1] For a detailed recitation of the factual history, please refer to our previous opinion. *Columbus Steel Castings Co. v. Transp. & Transit Assocs., LLC*, 10th Dist. No. 06AP-1247, 2007-Ohio-6640.

bankruptcy court's dismissal. In affirming, the United States Bankruptcy Appellate Panel for the Sixth Circuit ("Bankruptcy Appellate Panel") determined that the dispute between CSC and TTA had no bearing on the bankruptcy estate, since "TTA had waived its right to amend its proof of claim upwards in the event its claim of recoupment were later rejected by a court." *Id.* at 191.

{¶ 6} In December 2004, CSC filed a complaint against TTA in the Franklin County Court of Common Pleas to collect on the account receivable it purchased from Buckeye Steel. In its answer, TTA admitted the bankruptcy court's February 2003 sale order authorized CSC to purchase the account receivable owed by TTA to Buckeye Steel. TTA filed an answer and counterclaim, and raised recoupment as an affirmative defense. In its counterclaim, TTA alleged that Buckeye Steel breached its contract to supply parts and TTA suffered damages in an amount greater than it owed on the account receivable.

{¶ 7} The trial court denied the parties' motions for summary judgment and granted CSC's motion in limine to preclude TTA from asserting the affirmative defense of recoupment or from asserting a counterclaim. The court found that the entry constituted a final order, since "[p]reventing TTA from asserting its defense of recoupment affects a substantial right of TTA and effectively determines the action in favor of Plaintiff Columbus Steel Casting[s] Company." (R. 111, Nov. 15, 2006 Judgment Entry, 1-2.) TTA appealed from this judgment. On appeal, we reversed the judgment and remanded the cause to the trial court for further proceedings. We found, pursuant to the parties' agreement, New York substantive law and Ohio procedural law applied to resolve the issues in this case. We determined, in part, that the trial court erred in precluding TTA from asserting the defense of recoupment and in entering final judgment in favor of CSC. *Columbus Steel Castings Co. v. Transp. & Transit Assocs., LLC*, 10th Dist. No. 06AP-1247, 2007-Ohio-6640 ("*CSC I*"). In *CSC I*, we held that "the trial court incompletely applied the 'integrated transaction test' when it precluded TTA from asserting recoupment as a defense, and * * * as a consequence, the trial court therefore erred as a matter of law by granting summary judgment in favor of [CSC]." *Id.* at ¶ 48.

{¶ 8} On remand, CSC and TTA renewed their motions for summary judgment on the recoupment defense. On February 9, 2012, the court granted CSC's motion and held that TTA had no right of recoupment. The trial court determined that, consistent with

New York substantive law, the "integrated transaction test" applied to an analysis of TTA's recoupment defense. (R. 167, Feb. 9, 2012 Decision on Remand, 14.) The trial court found TTA's claim did not satisfy the integrated transaction test because the parties' purchase agreement allowed TTA to reject individual deliveries and terminate individual orders or parts of orders. (Feb. 9, 2012 Decision, 18.) The trial court further determined that it would be inequitable for TTA to enjoy the benefits of the completed transactions without meeting its obligations by paying for the parts delivered to and accepted by it because TTA's recoupment claim was limited to deliveries that were never made by Buckeye Steel after the deliveries and acceptance of goods that are the subject of CSC's action.

{¶ 9} In June 2012, TTA sought leave to amend its 2004 answer and counterclaim to raise a new claim that the account receivable at issue was never properly assumed by nor assigned to CSC. The trial court denied the motion as untimely and concluded TTA did not provide reasonable justification in support of its motion for leave and, if granted at that late stage of the proceedings, would be unduly prejudicial to CSC.

{¶ 10} After a bench trial, on October 18, 2012, the trial court issued a decision finding CSC properly pleaded and proved the essential elements of an account stated. The trial court granted judgment in favor of CSC on its complaint and against TTA in the amount of $2,008,969.06 as of July 25, 2012, plus interest thereafter at a rate of 3 percent per annum, and court costs.[2]

## II. ASSIGNMENTS OF ERROR

{¶ 11} On appeal, TTA assigns the following errors:

> 1. Error in holding that the transaction at issue amounts to an account stated.
>
> 2. Error in granting summary judgment in favor of Plaintiff/Appellee and precluding Defendant/Appellant from asserting the defense of recoupment.
>
> 3. Error in holding that Plaintiff/Appellee acquired an enforceable interest in the purchase order from which the purported "account receivable" issued.

---

[2] The trial court also entered judgment in favor of CSC and against TTA on TTA's counterclaim, but that portion of the judgment is not the subject of this appeal.

## III.  DISCUSSION

{¶ 12} As noted in *CSC I*, we will apply New York law to substantive issues and Ohio law to procedural matters based on the choice-of-law provision in the purchase order.  *CSC I* at ¶ 18-19. Additionally, due to the nature of the assignments of error, we elect to address them out of order.

{¶ 13} In its third assignment of error, TTA contends CSC did not acquire an enforceable interest in the account receivable between TTA and Buckeye Steel.  TTA asserts that the account receivable was an excluded asset and, therefore, not purchased by CSC under the bankruptcy sale.  In response, CSC asserts that the Bankruptcy Appellate Panel's decision was premised on the fact that CSC was the owner of the account receivable.  CSC argues that TTA should have raised any challenge to the sale order in the bankruptcy proceedings and is therefore precluded from litigating this issue here.  We agree.

{¶ 14} In *Mickowski v. Visi-Trak Worldwide, LLC*, 321 F.Supp.2d 885, 898 (N.D.Ohio 2004), Mickowski challenged as fraudulent a purchase of assets approved by the bankruptcy court under the U.S. Bankruptcy Code.  Mickowski participated in the hearing held by the bankruptcy court on the public sale and raised no objection. Mickowski took no appeal from the order confirming the sale and did not seek to vacate it; instead, he filed a separate suit based on fraud seeking "heavy damages" from the purchaser of the assets.  The United States District Court for the Northern District of Ohio dismissed the claim, concluding it was a " 'thinly disguised collateral attack on the judgment confirming the sale.' "  *Id.*, citing *In re Met-L-Wood Corp.*, 861 F.2d 1012 (7th Cir.1988) ("the order confirming the sale of assets under § 363 of the Bankruptcy Code was a final appealable order that could not be attacked by a separate suit").  *See also In re Parker*, 368 B.R. 86 (6th Cir.BAP Ky.2007); *In re PC Liquidation Corp.*, 383 B.R. 856, 867 (E.D.N.Y. 2008).

{¶ 15} While TTA filed a proof of claim in the bankruptcy proceedings, it did not object to the bankruptcy sale order of Buckeye Steel's assets or appeal from the order confirming the sale.  Instead, TTA is now challenging the bankruptcy court's sale order in this case, by stating that CSC never properly assumed the account receivable at issue. Had TTA objected to the bankruptcy court's sale order to raise its claim that Buckeye Steel

did not sell the account receivable to CSC, the claim would have impacted the bankruptcy estate, and the bankruptcy court would have retained jurisdiction over the matter. The consummation of the sale order between Buckeye Steel and CSC, which included the account receivable, served as the foundation for the Bankruptcy Appellate Panel's finding that it did not have jurisdiction to enforce CSC's demand for payment. *Buckeye Steel* at 191. Therefore, TTA's challenge to the sale order constitutes an impermissible collateral attack on the bankruptcy court's sale order between Buckeye Steel and CSC.

{¶ 16} Finally, TTA claims that whether CSC obtained the account receivable is a legal determination that we need to reach and not a factual issue that can be admitted by a party. While not specifically assigned as error, TTA also contends the trial court erred in excluding evidence related to its claims that: (1) CSC did not obtain an enforceable interest in the account receivable, and (2) Buckeye Steel had breached the purchase order involving the invoices for unpaid deliveries because those deliveries were not made on time. We need not reach these issues because of the preclusive effect of the bankruptcy court proceedings.

{¶ 17} TTA's third assignment of error is overruled.

{¶ 18} In its first assignment of error, TTA asserts the trial court erred in granting judgment in favor of CSC because CSC failed to plead or prove the essential elements of an account stated. CSC contends that TTA had fair notice of the cause of action; alternatively, CSC asserts that TTA waived the defense that the complaint failed to state a claim.

{¶ 19} Generally, a defendant must serve an answer within 28 days after service of the complaint. Civ.R. 12(A). Civ.R. 12(B) provides for an exception whereby certain defenses may be made by motion, including the "failure to state a claim upon which relief can be granted." Civ.R. 12(B)(6). A Civ.R. 12(B)(6) motion "shall be made before pleading," i.e., before filing an answer. Civ.R. 12(B); *Patton v. Risner*, 3d Dist. No. 16-09-14, 2010-Ohio-191, ¶ 9. TTA never filed a Civ.R. 12(B)(6) motion regarding CSC's complaint. While TTA claims it could not "waive the right to challenge a claim that was never asserted," TTA actively participated in years of litigation and trial. (Appellant's reply brief, 3.) In general, a party waives the right to raise an argument on appeal that it could have raised, but did not, in earlier proceedings. *Cristino v. Bur. of Workers' Comp.*,

10th Dist. No. 12AP-60, 2012-Ohio-4420, ¶ 23; *Niskanen v. Giant Eagle, Inc.*, 122 Ohio St.3d 486, 2009-Ohio-3626, ¶ 34.  Since TTA's argument concerning CSC's complaint was not raised before the trial court, we need not address it here.

{¶ 20} TTA next claims that CSC failed to prove the essential elements of an account stated.  Specifically, TTA contends that CSC did not provide evidence that the parties agreed that a specific balance was owed.

{¶ 21} An appellate court cannot reverse a judgment supported by some competent, credible evidence on all the essential elements of the case as being against the manifest weight of the evidence.  *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279, 280 (1978).  "[I]n reviewing a judgment under the manifest-weight standard, a court of appeals weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in the evidence, the finder of fact clearly lost its way."  *Judson v. Lyendecker*, 10th Dist. No. 12AP-615, 2013-Ohio-1060, ¶ 17, citing *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 20.

{¶ 22} Under New York law, in order to establish an account stated, a plaintiff must prove that a defendant manifested an express or implied " 'promise [as] a debtor to pay a stated sum of money which the parties had agreed upon as the amount due.' " *David R. Maltz & Co., Inc. v. Wachovia Bank, N.A.*, E.D.N.Y. No. 07 CV 1049 (WDW), 2010 WL 1286308 (Mar. 31, 2010), quoting *White Diamond Co., Ltd. v. Castco, Inc.*, 436 F.Supp.2d 615, 623 (S.D.N.Y.2006); *see also Kramer, Levin, Nessen, Kamin & Frankel v. Aronoff*, 638 F.Supp. 714, 719 (S.D.N.Y.1986).  *See Eastman Kodak Co. v. W.H. Henken Industries, Inc.*, W.D.N.Y. No. 05-CV-6425, 2007 WL 1726472 (June 14, 2007), quoting *LeBoeuf, Lamb, Greene & MacRae, L.L.P. v. Worsham*, 185 F.3d 61, 64 (2d Cir.1999) (citation and internal quotation marks omitted) ("To recover under a theory of an 'account stated,' a plaintiff must demonstrate 'an agreement between the parties to an account based upon prior transactions between them.' "); *see also Abbott, Duncan & Wiener v. Ragusa*, 214 A.D.2d 412, 413, 625 N.Y.S.2d 178 (1995) ("An account stated is an account, balanced and rendered, with an assent to the balance either  express or implied. There can be no account stated where no account was presented or where any dispute about the account is shown to have existed.") (internal citations omitted).

{¶ 23} Acceptance of the account as correct and a promise to pay may be implied if " 'a party receiving a statement of account keeps it without objecting to it within a reasonable time' or 'if the debtor makes partial payment.' " *Worsham* at 64, quoting *Chisholm-Ryder Co., Inc. v. Sommer & Sommer*, 70 A.D.2d 429, 421 N.Y.S.2d 455, 457 (1979). Under a claim for an account stated, " '[e]ven though there may be no express promise to pay, yet from the very fact of stating an account, a promise arises by operation of law as obligatory as if expressed in writing.' " *Leepson v. Allan Riley Co., Inc.*, S.D.N.Y. No. 04 Civ. 3720 (LTS)(AJ), 2006 WL 2135806 (July 31, 2006), quoting *Aronoff* at 719. *Interman Indus. Prods., Ltd. V. R.S.M. Electron Power, Inc.*, 37 N.Y.2d 151, 332 N.E.2d 859, 861 (1975); *see also Law Offices of Kleinbaum v. Shurkin*, 88 A.D.3d 659, 931 N.Y.S.2d 879 (2011); *Manhattan Telecommunications Corp. v. Best Payphones, Inc.*, 299 A.D.2d 178, 749 N.Y.S.2d 246 (2002).

{¶ 24} Further, receipt and retention of invoices seeking payment without objection within a reasonable time raises an actionable account stated. *Jim-Mar Corp. v. Aquatic Constr., Ltd.*, 195 A.D.2d 868, 600 N.Y.S.2d 790, 791-92 (1993); *Whiteman, Osterman & Hanna, LLP v Oppitz*, 105 A.D.3d 1162, 1163, 963 N.Y.S.2d 432 (2013) ("[P]laintiff demonstrated its entitlement to judgment [on an account stated] as a matter of law by tendering evidence that it generated invoices for services rendered on a monthly basis, mailed those invoices to defendant and did not receive any specific objection in response thereto until after the commencement of this action."); *Marino v. Watkins*, 112 A.D.2d 511, 490 N.Y.S.2d 917 (1985).

{¶ 25} In its complaint, CSC alleges details of the purchase order between Buckeye Steel and TTA, whereby Buckeye Steel agreed to deliver truck components to TTA. The complaint further alleged that TTA accepted deliveries from Buckeye Steel, but failed to pay for certain deliveries and freight charges. CSC detailed the amount due in the complaint and attached the invoices that Buckeye Steel sent to TTA in support of this amount. TTA presented no evidence that it objected to the amount listed on any of the invoices within a reasonable time after receipt. Further, at trial, John R. Downes, vice-president of engineering for CSC, testified he had been employed as a director for Buckeye Steel before it went bankrupt. Downes indicated the invoices that are the subject of CSC's civil action reflected Buckeye Steel's delivery of goods under the contract that were

accepted by TTA, with associated freight charges, but were not paid for. TTA provided no evidence to refute this testimony that this balance was not paid. Therefore, TTA impliedly accepted the amount due as correct and promised to pay it.

{¶ 26} For these reasons, we find CSC proved its claim for an account stated and the trial court's judgment is supported by competent, credible evidence on the essential elements of that claim. TTA's first assignment of error is overruled.

{¶ 27} In its second assignment of error, TTA asserts the trial court erred by granting summary judgment in favor of CSC and precluding TTA from asserting its defense of recoupment.

{¶ 28} We review a summary judgment motion de novo. *Cashlink, L.L.C. v. Mosin, Inc.*, 10th Dist. No. 12AP-395, 2012-Ohio-5906, ¶ 14. When an appellate court reviews a trial court's disposition of a summary judgment motion, it applies the same standard as the trial court and conducts an independent review, without deference to the trial court's determination. *Id.* We must affirm the trial court's judgment if any grounds the movant raised in the trial court support it. *Id.*

{¶ 29} Pursuant to Civ.R. 56(C), summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Accordingly, summary judgment is appropriate only under the following circumstances: (1) no genuine issue of material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion, that conclusion being adverse to the nonmoving party. *Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64, 66 (1978).

{¶ 30} CSC's motion for summary judgment surrounded TTA's defense of recoupment. In general, " 'recoupment' may be defined as, among other things, '[t]he right of a defendant to have the plaintiff's claim reduced or eliminated because of the plaintiff's breach of contract or duty in the same transaction.' " *CSC I* at ¶ 34, quoting *Black's Law Dictionary* 1302 (8th Ed.2004). The crucial question in most recoupment cases is whether the pertinent duties are part of the "same transaction." Courts have

generally applied one of two approaches to make this determination: (1) the "logical relationship" test, in which courts permit different obligations to be recouped against each other as long as the obligations are sufficiently interconnected so that it would be unjust to require one party to fulfill its obligation without requiring the other party to do so, or (2) the "integrated transaction" test, in which the obligations at issue must arise out of a single integrated transaction so that it would be inequitable for the debtor to enjoy the benefits of the transaction without also meeting its obligations. *Id.* at ¶ 43, quoting *Collier on Bankruptcy* (15th Ed.2007), 553-103 to 553-104.

{¶ 31} TTA first claims that the trial court erred by applying the "integrated transaction test" instead of the "logical relationship test" when considering TTA's defense of recoupment. In *CSC I*, at ¶ 47, although we observed that the trial court had not mentioned the "logical relationship test," we did not require the court on remand to apply that test. As noted previously, New York law governs substantive issues in this case. *CSC I* at ¶ 22, 37. New York has repeatedly adopted the more restrictive "integrated transaction test" when considering the asserted defense of recoupment. *In re Malinowski*, 156 F.3d 131, 133 (2d Cir.1998); *Westinghouse Credit Corp. v. D'Urso*, 278 F.3d 138, 147 (2d Cir.2002); *In re Delta Airlines*, 359 B.R. 454, 466 (S.D.N.Y.2006) ("The second approach, adopted by the Second Circuit, incorporates a more restrictive 'single integrated transaction test.' "); *Developmental Disabilities Inst., Inc. v Chancellor, New York City Dept. of Edn.*, 2010 N.Y. Misc. LEXIS 4296 (N.Y.Sup.Ct. Aug. 11, 2010) Therefore, TTA's first claim under this assignment of error lacks merit.

{¶ 32} TTA next claims that, even if the integrated transaction test was proper, the trial court failed to consider that Buckeye Steel did not meet its obligations under the purchase order. TTA again contends it should have been allowed to present evidence in support of its claim that Buckeye Steel failed to timely deliver items and components pursuant to the purchase order. As a result, TTA concludes the trial court's failure to consider Buckeye Steel's obligations, or to allow TTA to present evidence of its recoupment defense at trial, warrants reversal.

{¶ 33} When considering TTA's recoupment defense, the trial court determined that the purchase order between Buckeye Steel and TTA created "separate and distinct remedies for discrete portions of the transactions":

> Specifically, the purchase agreement allowed TTA to reject individual deliveries and terminate individual orders or parts of orders upon notice. (*See* Purchase Agreement, Sections 5, 12(A)-(B).) As such, the parties' obligations arose from discrete and independent units.

(Feb. 9, 2012 Decision, 18.) *See Westinghouse Credit* at 147, quoting *Malinowski* at 135 ("[E]ven where the parties' claims arise from a single contract, if 'the contract itself contemplates the business to be transacted as discrete and independent units,' recoupment may not be applied.").

{¶ 34} On remand, the trial court held that because TTA's recoupment defense was limited to "deliveries that were never made" rather than any "deficiency with the deliveries it received but for which it did not pay," "it would be inequitable for TTA to enjoy the benefits of the discrete transactions that were completed without also meeting its obligations as to those deliveries." (Feb. 9, 2012 Decision, 18.) We discern no error in the trial court's conclusion. TTA accepted the delivered goods and used them without paying for them and the associated freight charges. Equity demanded that Buckeye Steel's successor-in-interest for those discrete transactions (CSC) be paid by TTA.

{¶ 35} Moreover, as previously discussed, TTA's argument about its inability to present additional evidence in support of its recoupment defense is not properly before this court.

{¶ 36} For these reasons, TTA's second assignment of error is overruled.

## IV. CONCLUSION

{¶ 37} For the foregoing reasons, TTA's assignments of error are overruled, and the judgments of the Franklin County Court of Common Pleas are affirmed.

*Judgments affirmed.*

BROWN and DORRIAN, JJ., concur.

––––––––––––––