ELECTRONIC CITATION:  2004 FED App. 0002P (6th Cir.)
File Name:  04b0002p.06

**BANKRUPTCY APPELLATE PANEL OF THE SIXTH CIRCUIT**

In re:  BUCKEYE STEEL CASTINGS
COMPANY, INC.,

       Debtor.

_____

TRANSPORTATION & TRANSIT
ASSOCIATES,

       Appellant,

   v.

                        No. 03-8060

COLUMBUS STEEL CASTINGS
COMPANY,

       Appellee.

_____

Appeal from the United States Bankruptcy Court
for the Southern District of Ohio at Columbus.
No. 02-66859

Argued: February 4, 2004

Decided and Filed:  March 2, 2004

Before: COOK,  LATTA, and RHODES,  Bankruptcy Appellate Panel Judges.

_____

**COUNSEL**

**ARGUED:**   Jonathan M. Yarger, CHERNETT, WASSERMAN, YARGER &
PASTERNAK, Cleveland, Ohio, for Appellant.  Mark A. Kelley, KITCHENS KELLEY
GAYNES, Atlanta, Georgia, for Appellee. **ON BRIEF:**  Jonathan M. Yarger,
CHERNETT, WASSERMAN, YARGER & PASTERNAK, Cleveland, Ohio, for Appellant.
Mark A. Kelley, KITCHENS KELLEY GAYNES, Atlanta, Georgia, Marvin A. Sicherman,
DETTELBACH, SICHERMAN & BAUMGART, Cleveland, Ohio, for Appellee.

1

---

## OPINION

---

JOHN C. COOK, Bankruptcy Appellate Panel Judge.  In this case we must decide whether a motion to enforce an injunction contained in a sale order was ripe for adjudication.  For the reasons that follow, we do not think the question was ripe, and we therefore affirm the bankruptcy court's order dismissing the matter for lack of jurisdiction.

## I.  ISSUE AND SCOPE OF REVIEW

The issue in this case is whether the bankruptcy court erred in determining that it lacked jurisdiction of a motion to enforce an injunction.  A determination regarding jurisdiction is a question of law reviewed *de novo*.  *Nichols v. Muskingum College*, 318 F.3d 674, 677 (6th Cir. 2003) (citing *Joelson v. United States*, 86 F.3d 1413, 1416 (6th Cir. 1996)).  Any factual findings underlying the decision are reviewed for clear error.  *Id.* (citing *Jones v. City of Lakeland*, 175 F.3d 410, 413 (6th Cir. 1999)).

The order on appeal is final and may, therefore, be appealed as of right.  28 U.S.C. § 158(a)(1).  The United States District Court for the Southern District of Ohio has authorized appeals to the Bankruptcy Appellate Panel, and none of the parties has timely elected to have this appeal heard by the district court.  28 U.S.C. §§ 158(b)(6), (c)(1).  Accordingly, the panel has jurisdiction to decide this appeal.

## II. FACTS

On December 20, 2002, Buckeye Steel Castings Company, Inc., and certain affiliated corporations ("Debtor") filed voluntary Chapter 11 bankruptcy petitions.  On February 14, 2003, the bankruptcy court entered an order approving the sale, free and clear of liens and other claims, of substantially all of the Debtor's assets to Columbus Steel Castings Company ("CSC"), then known as Rail Castings Corp.  Among the assets sold were the Debtor's accounts receivable, including an account allegedly owed it by Transportation & Transit Associates ("TTA").  The sale order, in addition to providing that

the sale be free and clear of liens and other claims, enjoined all persons from taking any action against CSC to recover any claim they might have against the Debtor in respect to the assets sold.

The sale was consummated, and in due course CSC made demand on TTA for the payment of an account receivable CSC had bought under the Asset Purchase Agreement. This receivable originated in a contract in which the Debtor was to supply certain parts to TTA, which in turn would use them in the construction of railroad carriages. As of the petition date, TTA owed the Debtor over $1 million for parts already delivered. It refused CSC's demand for payment, however, contending that it had a right of recoupment which effectively wiped out CSC's receivable. According to TTA, the Debtor had breached its contract to supply parts, and TTA suffered damages of approximately $4 million as a result. TTA has filed a proof of claim against the Debtor reflecting its alleged damages for breach of the contract, less the amount of the receivable it owes the debtor. TTA's proof of claim, in other words, is computed as though the recoupment has already taken place.

On May 12, 2003, CSC filed a motion (not an adversary proceeding) in the bankruptcy court seeking an order (a) enforcing the sale order, and (b) compelling TTA to pay the account receivable. CSC contends that TTA's defenses, to the extent they include a set-off, are barred by the order's provisions that the sale was free and clear of liens and other claims. It seeks enforcement of that part of the court's order that prohibits actions to recover claims against CSC that arose out of the claimant's relationship with the Debtor.

On July 10, 2003, the bankruptcy court conducted a hearing on the motion at which neither party presented any evidence. At the hearing, CSC effectively withdrew its request for an order compelling payment, asking only for a determination that the sale order enjoined TTA from enforcing its defense to the account receivable. Also at the hearing, TTA announced that it had already applied the recoupment in the computation of its proof of claim, and it then expressly and irrevocably waived its right to increase the amount of its claim if the asserted right of recoupment is ever denied in any court. By order entered on July 21, 2003, the bankruptcy court dismissed the motion for lack of subject matter jurisdiction, and CSC filed this timely appeal.

## III. DISCUSSION

Notions of ripeness and the prohibition on advisory opinions bear out the bankruptcy court's conclusion that it had no jurisdiction in this matter. The power of federal courts extends only to cases and controversies, U.S. Const. art. III, § 2, cl. 1, and this has been interpreted to mean that

> [t]o be cognizable in a federal court, a suit "must be definite and concrete, touching the legal relations of parties having adverse legal interests. * * * It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, *as distinguished from an opinion advising what the law would be upon a hypothetical state of facts*." *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240-241, 57 S. Ct. 461, 464, 81 L. Ed. 617 (1937).

*North Carolina v. Rice*, 404 U.S. 244, 246, 92 S. Ct. 402, 404 (1971) (per curiam) (emphasis added). CSC's motion seeks just such an advisory opinion: whether TTA, in defending a lawsuit in district or state court by CSC to collect the account receivable, can successfully maintain the defense of recoupment.

The parties agree that the defense of recoupment survives the bankruptcy court's sale order and that TTA is therefore free to raise it in any litigation between the parties in any jurisdiction. They also agree that the defense of set-off is barred in any such litigation because it involves prosecuting a claim against the Debtor or CSC as assignee, which is prohibited by the sale order. Thus, CSC's motion asks the bankruptcy court to make a determination that "the facts constitute the defense of offset, or constitute a defense other than recoupment, and that [the Sale] order enjoined [TTA] from enforcing that defense; pure and simple." The bankruptcy court's jurisdiction was thus invoked by CSC, a mere buyer of estate assets, in order for the court to give its opinion about whether a not-yet-raised defense to a not-yet-filed collection action in some other court might be something other than a recoupment. That issue is not ripe for adjudication upon hypothetical facts of a hypothetical case. *See Stark v. Armstrong World Indus., Inc.,* No. 00-3444, 2001 WL 1217016, at *4, 20 Fed. App. 495, 500 (6th Cir. Oct. 3, 2001) ("Generally, where an opinion is sought merely to assist a party in some possible future litigation, justiciability principles argue against assuming jurisdiction."). The fact that the parties have a disagreement about how to characterize a possible defense in some possible future litigation does not present

4

a real and substantial controversy of sufficient immediacy to confer jurisdiction on a federal court.

In a similar case the Sixth Circuit has held that a district court lacked jurisdiction to grant Rule 60(b) relief to plaintiffs where the purpose of their motion was not to affect the case in which it was filed, but to position the plaintiffs to better parry a defense likely to be raised by defendants in a separate state court action that the plaintiffs had filed. *McCurry v. Adventist Health System/Sunbelt, Inc.*, 298 F.3d 586 (6th Cir. 2002). In *McCurry*, a wrongful death action was brought by the mother of a deceased man in district court under the diversity jurisdiction of the court. She was a resident of North Carolina, all defendants were Tennesseans. Under applicable Tennessee law, however, she lacked standing to sue because the decedent had a spouse, residing in Tennessee, who was the proper party plaintiff. Upon discovering these facts, the court dismissed the case for lack of standing and lack of subject matter jurisdiction (no diversity between wife and defendants).

About a year after the dismissal, the plaintiff moved for relief under Rule 60(b), asking the court to allow the wife to be joined as a plaintiff, despite the acknowledged fact that this could not cure the jurisdictional defect that had caused dismissal in the first instance. The district court granted the Rule 60 relief, but the Sixth Circuit reversed, holding in part that the district court lacked "case or controversy" jurisdiction and had given an advisory opinion. It quoted with approval from *General Electric Co. v. Local 761, International Union of Electrical, Radio & Machine Workers*, 395 F.2d 891, 895 (6th Cir. 1968), saying that "[t]he duty of this Court 'is to decide actual controversies by a judgment which can be carried into effect, and not to . . . declare principles or rules of law which cannot affect the matter in issue in the case before it.'" *McCurry*, 298 F.3d at 586 (quoting *Mills v. Green*, 159 U.S. 651, 653, 16 S. Ct. 132 (1895)). The court went on to find that

> [i]n light of all this, it is evident that the District Court's ruling on the Rule 60(b) motion could have no conceivable bearing upon any claim or issue in the present case.
>
> McCurry and Turner [plaintiffs] admit as much. Before the District Court, their counsel candidly stated that the "real reason" for their Rule 60(b) motion was to anticipate a statute of limitations defense that Defendants were likely to assert in the state court wrongful death action brought by McCurry and Turner.

5

*McCurry*, 298 F.3d at 597.

It seems that Tennessee had a savings statute which provided that dismissed actions could be refiled within a year of dismissal, but plaintiffs were concerned that the wife was not an original party plaintiff and that, as to her, the one year statute of limitations might have run unless recourse could be had to the savings statute. The savings statute, however, might not apply because of the lack of identity between the two plaintiffs (mother and wife) in the later state court lawsuit and the single plaintiff (the mother) in the original federal court lawsuit. Hence, the Rule 60(b) motion was designed as an attempted patch of that potential problem. The Sixth Circuit rejected the attempt.

> Given this ruling's lack of impact upon any matter at issue in *this* case -- and, indeed, it does not appear that there *were* any outstanding issues in this case at the time of the ruling -- it is extremely doubtful whether the circumstances permitted an exercise of the District Court's limited jurisdiction over actual cases and controversies.

*Id*. at 598 (emphasis in original).

Similarly, a ruling on CSC's motion would have no impact on any matter at issue in the bankruptcy case of Buckeye Steel Castings Company, Inc. Rather, a ruling on the motion would be tantamount to providing an advisory opinion on a possible defense that might be raised by TTA in a future lawsuit filed against it by CSC. The bankruptcy court properly declined to give an advisory opinion and properly refused jurisdiction.

Appellant CSC relies on *Luan Investment S.E. v. Franklin 145 Corp. (In re Petrie Retail, Inc.)*, 304 F.3d 223 (2d Cir. 2002), a case in which a lease owned by the debtor was sold free and clear of existing claims and an injunction in the sale order provided that the lessor, Luan Investment S.E., was enjoined from asserting any claim or any extant default or breach of the lease against the buyer, Marianne. Despite these prohibitions, Luan made demand on Marianne for rent arrearage and threatened to terminate the lease. It also sued Marianne in Puerto Rico Superior Court, claiming that Marianne had defaulted under the lease. Marianne applied to the bankruptcy court for an order enforcing its previously issued injunction, and the bankruptcy court, in granting the relief, specifically found that "Luan's demand of Marianne involved excluded liabilities as defined in the sale order." *Id*.

6

at 230. These "excluded liabilities" were the very ones which the sale order prohibited Luan from asserting.

The Second Circuit affirmed, upholding the well-established rule that a court has jurisdiction to enforce its injunctions. The injunction in *Petrie*, however, had already been violated by the demand and the lawsuit, and the bankruptcy court made findings that the "excluded liabilities" were indeed the basis of Luan's claims against Marianne. It was the classic situation in which a court determined that its injunction had in fact been violated and took action accordingly. In the case at bar, by contrast, there is no showing that TTA has done anything in violation of any order, there is no pending lawsuit of any kind, and there is only the bare possibility that TTA might assert a prohibited claim (i.e., something other than recoupment) if indeed it is ever sued. These material distinctions undercut CSC's reliance on *Petrie*. The immediacy and actuality of the violation in *Petrie* conferred jurisdiction. Here, neither exists and the matter is therefore not ripe for adjudication.

Finally, it should be noted that district courts and, by reference, bankruptcy courts have jurisdiction of "cases under title 11" and "civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. §§ 1334. The claim presented in this case could only be one "related to" the bankruptcy case. "[C]laims will be considered 'related to' the . . . bankruptcy proceeding if 'the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy.'" *Browning v. Levy*, 283 F.3d 761, 773 (6th Cir. 2002)(citation omitted). "Stated another way, a claim is 'related to' the bankruptcy proceeding if it would have affected the debtor's rights or liabilities." *Id.*

In dismissing the matter for lack of subject matter jurisdiction, the bankruptcy court, understandably, could not see how the dispute between CSC and TTA, which was "nothing more than a collection action," could possibly affect the bankruptcy estate, given that TTA had waived its right to amend its proof of claim upwards in the event its claim of recoupment were later rejected by a court. We likewise fail to see how a resolution of this collection action could affect the bankruptcy estate.

## IV. CONCLUSION

In the case at bar, CSC desires an order from the bankruptcy court foreclosing TTA from employing the defense of set-off, though not recoupment, against it in any future litigation to recover the account receivable. Since the parties agree and acknowledge that the defense of set-off is prohibited by the provisions of the asset sale order, it seems unlikely that TTA will risk contempt by raising that defense in future litigation. If TTA should, in some future litigation, plead the defense of recoupment, CSC and its attorneys will be on hand to ensure that the trial court makes the necessary distinctions and allows only a recoupment, if proper, and not a set-off. Given these considerations, the bankruptcy court properly dismissed CSC's motion for lack of subject matter jurisdiction. We therefore **AFFIRM**.