[Cite as *Kegler Brown Hill & Ritter Co., L.P.A. v. Croce*, 2025-Ohio-1627.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

Kegler Brown Hill & Ritter Co., L.P.A.,     :

         Plaintiff-Appellee,          :

                                  No. 23AP-9

v.                                 :         (C.P.C. No. 20CV-3954)

Carlo M. Croce, M.D.,                 :         (REGULAR CALENDAR)

         Defendant-Appellant.        :

---

D E C I S I O N

Rendered on May 6, 2025

---

**On brief:** *Cooper Elliott*, *Charles H. Cooper*, *C. Benjamin* Cooper, and *Rex H. Elliott*, for appellee. **Argued:** *C. Benjamin Cooper*.

**On brief:** *Johrendt & Holford*, and *Andrew Mills Holford*, for appellant. **Argued:** *Andrew Mills Holford*.

---

APPEAL from the Franklin County Court of Common Pleas

MENTEL, J.

{¶ 1} Defendant-appellant, Carlo M. Croce, M.D., appeals from the judgment entered in the Franklin County Court of Common Pleas after a jury awarded plaintiff-appellee, Kegler Brown Hill & Ritter Co., L.P.A. ("Kegler Brown"), slightly over one million dollars in damages in unpaid attorney fees and prejudgment interest. Dr. Croce asserted a defense in recoupment, which the trial court rejected after a bench trial. On appeal, Dr. Croce argues that the trial court violated his right to a jury trial by not allowing him to present his defense to the jury, failing to find the element of proximate cause in his defense after the bench trial, and excluding a portion of his expert witness's testimony not expressed in the expert's report. As explained below, we conclude that Dr. Croce had a right to have

a jury hear his defense. We therefore reverse the bench trial verdict, rendering the assertion of error arising from that verdict moot. Furthermore, we find no error in the trial court's decision to exclude a portion of the expert's testimony, and therefore affirm in part and reverse in part.

## I. Facts and Procedural History

{¶ 2} Dr. Croce is a research scientist at the Ohio State University who studies the genetic causes of cancer. (Oct. 28, 2022 Tr. Vol IV at 879-80.) He has authored hundreds of scientific papers and is the recipient of "about 60" national and international awards recognizing his research. *Id.* at 888.

{¶ 3} On November 23, 2016, a New York Times reporter, James Glanz, sent Dr. Croce a letter stating that he was preparing an article investigating "allegations" of "improper data manipulation and duplication . . . and plagiarism" that had resulted in the retraction and correction of "at least 15" scientific papers authored or co-authored by Dr. Croce. (Pl.'s Ex. 1 at 1.) The letter described "at least two whistleblowers," including a molecular virologist at Purdue University, David A. Sanders, who had "lodged over a dozen complaints" about Dr. Croce's work with the scientific journals that had published them. *Id.* Dr. Sanders' complaints had resulted in "at least four" corrections, the letter said, but "in other cases, Dr. Croce and colleagues [had] successfully disputed the claims and prevented corrections or retractions from being issued." *Id.* The letter contained 25 detailed questions about the accusations, as well as Dr. Croce's professional history, interactions with university officials arising from misconduct allegations involving a colleague, and the alleged use of his work by tobacco companies and their expert witnesses in the 1990s to cast doubt on the causal link between smoking and cancer.[1] *Id.*

{¶ 4} After receiving the letter, Dr. Croce retained Kegler Brown, seeking "to avoid an article in *The New York Times* based on that garbage," as well as "a retraction and an apology" from the reporter, James Glanz, and Dr. Sanders. (Oct. 28, 2022 Tr. Vol IV at 896.) On December 13, 2016, Dr. Croce signed an agreement authorizing the firm "to advise

---

[1] When dismissing Dr. Croce's claim against the New York Times, the federal district court noted that the article "informs the reader of Dr. Croce's long-held belief that smoking is a primary cause of lung cancer and of his statement that he was 'unaware' the industry was using his research," and included as well "his disclaimer that any use of his research or name to the contrary was 'false and fraudulent.' " *Croce v. New York Times Co.*, 345 F.Supp.3d 961, 982 (S.D.Ohio 2018).

and represent [him] regarding claims arising from statements and accusations" by James Glanz and Dr. Sanders that Dr. Croce believed to be "false and defamatory." (Joint Trial Ex. 1, hereinafter "Engagement Agreement".) As stated in the Engagement Agreement, the scope of representation

> include[d] investigating the falsity of [the statements and accusations] and pursuing the appropriate course of action against the responsible parties who may be liable for their publication, which course of action will, if appropriate and authorized by [Dr. Croce], include filing and prosecuting a lawsuit . . . in the United States District Court for the Southern District of Ohio against the appropriate defendants, which may include The New York Times, James Glanz, David A. Sanders, and, if the facts and the law merit it, Purdue University.

(Engagement Agreement at 1.)

{¶ 5} The agreement specified the hourly rates of two attorneys and a paralegal assigned to the matter. In addition, Dr. Croce agreed to be billed monthly for attorney fees and expenses, and to remit payment to the firm within 30 days of billing.

{¶ 6} For the next year and a half, Kegler Brown represented Dr. Croce on these matters, which led to the filing of two civil suits in federal court. The first lawsuit, filed against Dr. Sanders in the Franklin County Court of Common Pleas on March 2, 2017, alleged claims of defamation per se and intentional infliction of emotional distress. The New York Times published Mr. Glanz's article a week later. The case against Dr. Sanders was removed to the United States District Court for the Southern District of Ohio on April 21, 2017, where he later prevailed on summary judgment against Dr. Croce. *See Croce v. Sanders*, 459 F.Supp.3d 997 (S.D.Ohio 2020) (granting summary judgment) and *Croce v. Sanders*, 843 Fed.Appx. 710 (6th Cir. 2021) (affirming grant of summary judgment).

{¶ 7} Kegler Brown filed suit against the New York Times on Dr. Croce's behalf in federal district court on May 10, 2017, alleging defamation, false light, and intentional infliction of emotional distress. On November 6, 2018, the district court granted a motion to dismiss for failure to state a claim upon which relief may be granted, but allowed a claim of defamation based on one statement that Dr. Croce eventually agreed to dismiss. *See Croce v. New York Times Co.*, 345 F.Supp.3d 961 (S.D.Ohio 2018) (granting motion to dismiss) and *Croce v. New York Times Co.*, 930 F.3d 787 (6th Cir. 2019) (affirming dismissal).

{¶ 8}  Kegler Brown had ended its relationship with Dr. Croce well before the termination of the lawsuits it filed for him, however.  By the summer of 2017, Dr. Croce was behind on his payments to the firm.  (Tr. at 373.)  He paid the firm over $522,000 on August 22, 2017, and said that he would be auctioning off several paintings to free up cash.  *Id.* at 373-74.  But, by the end of November, he owed the firm over $358,000, and the unpaid balance continued to grow.  *Id.* at 374.  On July 10, 2018, attorney Thomas Hill emailed Dr. Croce about an overdue balance of $887,451.55, asking for an explanation about a promised payment by wire transfer that had never materialized.  (Pl.'s Ex. P-203.)  Three days later, Mr. Hill emailed Dr. Croce and informed him that Kegler Brown had "no alternative" but to file motions to withdraw as his counsel in the pending defamation cases, and to withdraw as his legal counsel in matters related to the university's investigation in the misconduct allegations.  (Pl.'s Ex. P-204.)  Dr. Croce responded, stating "you have done a remarkable job and I thank you.  It has been a pleasure to work with you."  *Id.*

{¶ 9}  Kegler Brown filed suit against Dr. Croce on June 18, 2020, alleging claims of breach of contract, breach of account, and a single claim asserting unjust enrichment, promissory estoppel, and quantum meruit.  In the statement of account attached to the complaint, the firm alleged a total balance due of $923,455.51.  (Ex. B, June 18, 2020 Compl.)  Dr. Croce answered on August 14, 2020, denied the amount due alleged in the complaint, and asserted a number of defenses, including a set-off or recoupment in excess of the fees demanded based on the firm's alleged "acts, omissions, breaches, failures, and/or negligence" during the representation.  (Answer at ¶ 72.)

{¶ 10} After discovery closed, Kegler Brown moved the trial court for summary judgment on each of its claims, arguing that the undisputed evidence demonstrated both that Dr. Croce had breached the representation agreement by failing to pay the invoiced fees and that the fees were reasonable.  Dr. Croce responded by arguing that issues of material fact remained as to liability and the reasonableness of fees, the existence of a written contract precluded the assertion of Kegler Brown's equitable claims for unjust enrichment and promissory estoppel, and he was entitled to assert his defense in recoupment before a jury.

{¶ 11} Dr. Croce also argued that Kegler Brown had materially breached the agreement by failing to hire experts during the investigative phase before filing defamation

claims on his behalf, but the trial court rejected this argument because the firm presented evidence that it had consulted with several experts. The trial court also rejected Dr. Croce's argument that "the reasonableness and necessity of the billed attorney fees creates a genuine dispute of fact as to his liability for [the] breach of contract claim," and granted summary judgment as to liability on that claim and the account claim. (Aug. 10, 2022 Journal Entry at 8.) In the trial court's assessment, the firm had presented undisputed evidence of "the existence of a contract, performance by [Kegler Brown], breach by Dr. Croce, and at least some damages." *Id.* The trial court denied the firm's motion for summary judgment as to its claim alleging unjust enrichment, promissory estoppel, and quantum meruit, noting that "[s]uch equitable doctrines do not apply to relationships governed by a valid and enforceable contract." *Id.* at 9. The only issue for a jury trial was "whether the remaining unpaid fees" charged by Kegler Brown were "reasonable and necessary," but the jury could not hear Dr. Croce's defense in recoupment. *Id.* at 11. Dr. Croce was time-barred from asserting a counterclaim for legal malpractice, which the jury would have heard. Instead, he could use the elements of legal malpractice to assert recoupment as an attempt to reduce the amount of damages awarded. Concluding that recoupment was an equitable defense to which no right to a jury trial attached, it would be heard by the court during a bench trial after the jury heard the firm's claims.

{¶ 12} After the first phase of trial, the jury found that the fees sought were reasonable and awarded Kegler Brown the entire amount of unpaid fees, $923,445.51. The trial court allowed Dr. Croce to present additional evidence relevant to his recoupment defense during the bench trial, but ultimately ruled that he was not entitled to any reduction of the damages awarded by the jury. After adding prejudgment interest to the damages, the final judgment awarded Kegler Brown totaled $1,098,624.80. (Dec. 8, 2022 Jgmt.)

{¶ 13} Dr. Croce appealed the judgment and asserts the following assignments of error:

> [I.] A trial court errs as a matter of law when it denies the fundamental right to a jury trial on the defense of recoupment for legal malpractice and negligent failure to advise.
>
> [II.] The trial court's failure to find proximate cause where the uncontroverted evidence showed a failure to advise the client about a remedy's unavailability was against the manifest weight of the evidence.

[III.] Excluding key expert testimony during a jury trial, as a discovery sanction, fairly disclosed in both a report and deposition testimony, is prejudicial error warranting reversal.

## II. Analysis

### A. First Assignment of Error

{¶ 14} In the first assignment of error, Dr. Croce argues that the trial court erred when it ruled that his recoupment defense could not be heard by a jury, but only by the trial court after bifurcating the proceedings and conducting a bench trial. Whether or not Dr. Croce was entitled to have the jury hear his recoupment defense is "purely a question of law," which we review de novo, with no deference to the trial court's ruling on the issue. *Hild v. Samaritan Health Partners*, 2024-Ohio-3338, ¶ 11, 16 (applying de novo review to question of whether trial court's application of the same-juror rule, which prohibited jurors "who did not find negligence from voting on the issue of proximate cause," infringed on appellant's right to a jury trial under the Ohio Constitution).

{¶ 15} In Ohio, the right to a jury trial is deemed "inviolate" by Article I, Section 5 of the Ohio Constitution. "For centuries it has been held that the right of trial by jury is a fundamental constitutional right, a substantial right, and not a procedural privilege." *Cleveland Ry. Co. v. Halliday*, 127 Ohio St. 278, 284 (1933). *See also Arrington v. DaimlerChrysler Corp.*, 2006-Ohio-3257, ¶ 21 (describing constitutional right to a jury trial as "a venerable one derived from Magna Carta, embodied first in the federal Constitution, then in the Northwest Ordinance of 1787, and thereafter in the Ohio Constitution"). The right functions as a check on "government oppression" in criminal cases while, in both civil and criminal cases, its purpose is "to assure a fair and equitable resolution of factual issues" disputed by parties in an adversarial system. *Colgrove v. Battin*, 413 U.S. 149, 157 (1973).

{¶ 16} Nevertheless, "[t]he Constitution does not entitle all civil litigants to a trial by jury. Instead, it preserves the right only for those civil cases in which the right existed before the adoption of the constitutional provision providing the right." *Arrington* at ¶ 22. In other words, Article I, Section 5 guarantee "only preserves the right of trial by jury in cases where under the principles of the common law it existed previously to the adoption of the Constitution." *Belding v. State*, 121 Ohio St. 393, 396 (1929). *See also McClain v. State*, 2022-Ohio-4722, ¶ 7 (explaining that *Belding* "clarified that a right to a jury trial in civil

cases is available only when, under the principles of the common law, the type of claim existed prior to the adoption of the Ohio Constitution"). In contrast, equitable actions that historically "belonged to the exclusive jurisdiction of courts of chancery," and were "properly triable to the court" alone, afforded a party no "right to a jury." *Hull v. Bell*, 54 Ohio St. 228, 239 (1896) (discussing claims for "specific performance of contracts for the sale of real property"). *See also Turturice v. AEP Energy Servs., Inc.*, 2008-Ohio-1835, ¶ 20 (10th Dist.) (noting that "it remains the clear consensus of law in Ohio that equitable claims are not triable as of right to a jury").

{¶ 17}   The trial court properly allowed Kegler Brown to try its breach of contract claim to a jury, as such a claim derives from the common law. "The right of trial by jury has uniformly been recognized and enforced in this state in actions for money, where the claim is an ordinary debt" such as the firm's claim against Dr. Croce. *Belding* at 396-97. *See also Sutherland v. Gaylor*, 2021-Ohio-1941, ¶ 20 (10th Dist.) (discussing case law concerning proper parties to "common-law claims for breach of contract"). The question is whether Dr. Croce had a right as well to have the jury hear his recoupment defense.

{¶ 18} Before turning to that question, some introduction to the concept is necessary. "Recoupment is a defense which arises out of the same transaction as plaintiff's claim, is a claim of right to reduce the amount demanded and can be had only to an extent sufficient to satisfy the plaintiff's claim." *Riley v. Montgomery*, 11 Ohio St.3d 75, 77 (1984). Although there are statutory uses of the word in other contexts,[2] we are here concerned with the concept that evolved into the modern counterclaim under Civ.R. 13(C), described as follows in Anderson's Ohio Civil Practice:

> The modern counterclaim, governed by Civ. R. 13 and very closely related to counterclaims governed by Federal Rule 13, finds its sources in common law recoupment, equitable set-off and the statutory counterclaim developed under the codes. The Civ. R. 13 counterclaim covers a much broader scope than its forebears.

---

[2] *See, e.g., State ex rel. Dillon v. Indus. Comm.*, 2024-Ohio-744, ¶ 7 (explaining that "R.C. 4123.511(K) addresses when the [Bureau of Workers' Compensation] or a self-insuring employer must recoup compensation payments made in accordance with an order that is subsequently reversed on appeal"); *Cincinnati School Dist. Bd. of Edn. v. Hamilton Cty. Bd. of Revision*, 74 Ohio St.3d 639, 641 (1996) (construing R.C. 5715.19, which describes relation-back of "taxes or recoupment charges" for purposes of tax valuation).

> In the common law courts, a defendant was permitted affirmatively to plead facts which would reduce plaintiff's recovery against defendant provided that the facts defendant affirmatively pleaded arose out of the transaction which constituted plaintiff's claim. Hence, if plaintiff sued for a certain sum for labor performed, defendant might plead that certain damage resulted from the labor and that the amount owed for labor should be reduced. Such reduction of damage was termed **recoupment**. But if defendant owed plaintiff on one debt, the former was not permitted in a common law court to set off plaintiff's claim against a separate debt which plaintiff owed to defendant. Defendant was forced to bring a separate suit on the debt. **In contrast, equity courts within limits permitted opposing parties to set off unrelated claims**. When law and equity were merged, the equitable principle of set-off was adopted; hence, in the same action when plaintiff sued on a contract debt, defendant was permitted to file a counterclaim on an unrelated contract debt.

(Emphasis added.)  3 *Anderson's Ohio Civil Practice with Forms*, § 155.02.

{¶ 19} These concepts were codified in former R.C. 23019.16, which governed counterclaims in code pleading, before taking form as a "modern counterclaim" under Civ.R. 13.  *Id.  See also Thirty-Four Corp. v. Hussey*, 1985 Ohio App. LEXIS 7654, *11 (10th Dist. May 7, 1985) (stating that "setoff and recoupment have been incorporated into the broader concept of a counterclaim under Civ. R. 13, and, to a lesser extent, into the affirmative defenses of Civ. R. 8(C)").  As is relevant here, recoupment also evolved to allow the assertion of a defense that, if stated as a claim for relief, would otherwise be barred by a statute of limitations.  "A claim of a defendant which would be barred by the statute of limitations if brought in an action for affirmative relief is available as a defense or under the common-law theory of recoupment, when the claim arises out of the same transaction as the plaintiff's claim for relief, and when it is offered only to reduce the plaintiff's right to relief."  *Riley* at paragraph one of the syllabus.

{¶ 20} With these concepts in mind, we turn to a trio of early cases from the Supreme Court of Ohio to determine whether a defendant has the right to a jury trial when asserting a recoupment defense.  First, in *S.B. Wellsville v. Geisse*, 3 Ohio St. 333 (1854), a contractor brought a quantum meruit claim against a steamboat, seeking payment for extensive repair work performed.  The steamboat denied the contractor's right to relief and provided notice of its intention to "give in evidence a certain contract" between the contractor and the

steamboat's owner, which contained provisions describing the repair work the contractor had performed. *Id.* at 333. After several trials, the contractor prevailed. The steamboat appealed, arguing that the terms of the contract should have governed the contractor's right to any recovery.

{¶ 21} The Supreme Court of Ohio hypothesized that if the steamboat's owner "had been [the] defendant instead of the boat" and had given proper notice of his intent to use the contract "to show defects in the work," the action would have been one for breach of contract in which the owner might have asserted "a reduction of damages, or *recoupment*" proven by evidence of the contract's defective work. *Id.* at 339. However, because "recoupment is to be had as a counterclaim, and cannot be had under the denial allowed in a mere answer," the steamboat's pleading did not provide adequate notice of a counterclaim in recoupment. *Id.* at 342. The court did not, therefore, disturb the judgment in favor of the contractor.

{¶ 22} Nevertheless, *Geisse* provided the court with the opportunity to discuss the principle of recoupment and its origin in the common law, leading it to recognize the validity of the doctrine in Ohio. Recoupment "is a part of Ohio law, we feel bound to declare." *Id.* at 340. In an action premised on a breach of contract or "brought to recover a stipulated price for work or goods, or the like . . . the unskilfulness of the performance, the defective quality of the goods, or like failure of the plaintiff to fill all the conditions of his contract, has been held to entitle the defendant, not to a bar of the claim, but a cross action, or a recoupment in the action already brought." *Id.* at 341. Justice Warden further wrote:

> I am persuaded that in far the greater number of [Ohio's] judicial divisions, the right of *recoupment* is constantly recognised. As for its claims to be considered a part of the common law, it is sufficient to say, that though long disused, and sometimes denied, it is an ancient familiar in the English courts, well known to Coke himself.[3]

*Id.* at 339-40.

{¶ 23} A year later, the Supreme Court of Ohio reaffirmed a defendant's right to assert recoupment under Ohio law. In *Timmons v. Dunn*, 4 Ohio St. 680 (1855), the buyer of a horse brought an action for breach of warranty before a justice of the peace, who

---

[3] Sir Edward Coke (1152-1634), renowned English jurist and chronicler of the common law.

entered judgment in favor of the seller. The buyer appealed to the court of common pleas. There, the seller argued that the buyer was barred from bringing the action because the parties had previously litigated the dispute in another case before a different justice of the peace. In the previous case, the seller, as plaintiff, had sued for breach of a promissory note, and the buyer had unsuccessfully asserted "a claim to *recoup* the damages, by reason of the alleged breach of warranty." *Id.* at 680. However, the judge in the court of common pleas disallowed testimony about the previous case and the buyer's unsuccessful recoupment defense.

{¶ 24} Applying *Geisse*, the Supreme Court of Ohio observed that "the doctrine of *recoupment* is a part of the law of this state," and although the doctrine "had a very imperfect foothold in the early and technical period of the common law . . . it has become fully naturalized in the courts of England and the United States." *Id.* at 683. Recoupment allows "the defendant, who upon his part has a right of action against the plaintiff, growing out of the same transaction, by giving notice of his intention to do so, to settle his rights in the same suit, and to deduct so much from the plaintiff's claim as he would be entitled to recover if he brought a cross action." *Id.* In recoupment, "the court and jury employed to settle the rights of the plaintiff, are as competent as any other can be to settle those of the defendant." *Id.* at 684. Because the buyer had the opportunity to assert the defense in the first action, the lower court had erred by "rejecting the evidence offered, to show that it was so litigated," and the buyer was barred from bringing a subsequent action after unsuccessfully asserting recoupment in the first action. *Id.*

{¶ 25} In the third case, the court reversed in favor of the party arguing that it had the right to present a recoupment defense. In *M. B. Upton & Co. v. I. J. Julian & Co.*, 7 Ohio St. 95, 96 (1857), Upton & Co. signed a promissory note to purchase "a lot of stoves, stove plates, tin ware, a patent right for a cooking stove, and a lot of stove patterns and flasks" sold by Julian & Co. After Julian & Co. sued on the note, Upton & Co. "gave notice" of its intent to prove at trial that it had "fully settled, paid and adjusted the amount of the purchase, with the exception of the note mentioned," and that Julian & Co. had failed to deliver the promised items, the patent deed for the stove, and had delivered defective items. *Id.* However, the trial court "refused to allow the evidence" offered by Upton & Co. to show

that Julian & Co. was not entitled to all the damages it sought. *Id.* at 96. After judgment, Upton & Co. appealed.

{¶ 26} The court noted that in *Geisse*, "the right of a defendant, . . . under a proper state of pleadings, to reduce, by way of recoupment, the damages sought to be recovered by the plaintiff, was directly considered and fully recognized as the law of this State." *Id.* at 97. In contrast to the defendant in *Geisse*, Upton & Co. "had laid a proper foundation for the exercise of this right [to recoupment], which called in question the performance, on the part of the plaintiffs, of their stipulations in the contract which formed the consideration of the note sued upon." *Id.* at 98. Thus, the trial court erred when it excluded the evidence submitted "to prove the truth of" Upton & Co.'s recoupment defense, "and should have been allowed to go to the jury." *Id.* Because the jury should have been allowed to hear the evidence of recoupment, the court reversed the trial court's judgment and remanded the case. *Id.*

{¶ 27} Two salient points emerge from these cases. First, *Geisse* and *Timmons* recognized that recoupment existed at common law. *Geisse*, 3 Ohio St. at 339 (describing recoupment as "a part of the common law"); *Timmons v. Dunn*, 4 Ohio St. at 683 (explaining that although recoupment "had a very imperfect foothold in the early and technical period of the common law . . . there is no hazard now in affirming, that, with very inconsiderable exceptions, it has become fully naturalized in the courts of England and the United States"). This observation was not confined to the court's cases decided before the Civil War. *See Riley v. Montgomery*, 11 Ohio St.3d 75, 78 (1984) (holding that "a claim which would be barred by the statute of limitations if brought in an action for affirmative relief is available as a defense or under the common-law theory of recoupment, when the claim of the defendant arises out of the same transaction as the plaintiff's claim for relief, and when it is offered to reduce the plaintiff's right to relief").

{¶ 28} Scholarship has also recognized the "common law origin" of recoupment. Burks & Morrissett, *Pleading and Practice in Actions at Common Law*, § 228 (1921) (stating that "[r]ecoupment is of common law origin, but its use was very much more restricted than it is under modern practice" because it was not available as a defense "against sealed instruments," which required "a separate action against the plaintiff"). *See also* Thomas W. Waterman, *A Treatise on the Law of Set-Off, Recoupment, and Counter-*

*Claim*, § 416 (1869) (describing recoupment as "well settled upon common law principles") and § 419 (stating that "the first cases of the defense" of recoupment were found in fraud cases "in the common law courts of England"); Robert B. Lowry, *Counterclaims (or Cross-petitions) in Ohio Practice*, 19 U.Cin.L.Rev. 311, 314 ("Recoupment was recognized at common law, and, of course, is still recognized.").

{¶ 29} The second point is the recognition, in both *Timmons* and *Upton & Co.*, of a jury hearing a recoupment defense. In *Timmons*, when giving a "moment's attention to the principles upon which [recoupment] is founded," the court emphasized the inefficiency of forcing the defendant to bring a separate suit "instead of being settled in one," stating that "individual justice and public policy unite in requiring a definitive settlement at the earliest moment that the rights of the parties can be properly investigated." *Timmons*, 4 Ohio St. at 683. Recoupment "involves no examination of separate transactions, and the court *and jury* employed to settle the rights of the plaintiff, are as competent as any other can be to settle those of the defendant." (Emphasis added.) *Id*. at 684. In *Upton & Co.*, evidence of recoupment "should have been allowed to go to the jury" after the defendant "had laid a proper foundation for the exercise of this right" to assert the defense, so the reversal and remand were necessary. *M. B. Upton & Co.*, 7 Ohio St. at 98. *See also Holzworth v. Koch, Mayer & Goldsmith*, 26 Ohio St. 33, 36-37 (1875) (holding that trial court did not err when refusing to instruct jury that parol evidence, including the plaintiff's alleged "failure to furnish goods," could be considered as evidence of a failure of consideration on a promissory note, but the latter "entitled the defendants to recoupment for damages, or to an abatement of the plaintiff's claim, to the extent the defendants may have suffered loss by the failure").

{¶ 30} More recently, the Eighth District Court of Appeals affirmed a jury award for damages awarded to an accountant after his clients failed to pay for services, as well as the jury's decision to reject their recoupment defense: "Had the jury found in their favor, it could have reduced the award for nonpayment on account as a recoupment or setoff." *Mohammadpour v. Haghighi*, 2023-Ohio-4211, ¶ 33 (8th Dist.). *See also Ferrara v. Vicchiarelli Funeral Servs.*, 2015-Ohio-2273, ¶ 4 (8th Dist.) (plaintiff's defense of recoupment asserted in response to defendant's counterclaim for breach of contract "necessarily rejected by the jury's verdict in favor of" plaintiff); *Star Bank, Natl. Assn. v.*

*Cirrocumulus Ltd. Partnership*, 121 Ohio App.3d 731, 747 (8th Dist. 1997) (assignment of error challenging jury's rejection of defense of recoupment rendered moot by holding that plaintiff was a holder in due course who took note free of asserted defenses).

{¶ 31} In defense of the trial court's ruling, Kegler Brown argues that because "the defense of recoupment is equitable in nature," and there is no right to a jury trial of equitable claims, Dr. Croce had no right to have a jury hear his defense. (Brief of Appellee at 9.) The firm cites several cases that describe recoupment as "equitable." *Id.*, citing *Columbus Steel Castings Co. v. Transp. & Transit Assocs., LLC*, 2007-Ohio-6640, ¶ 73 (10th Dist.) ("equitable recoupment is an affirmative defense") and *Bash v. Laikin* (*In re Fair Fin. Co.*), 2013 Bankr. LEXIS 5663, *57 (Bankr.N.D.Ohio Oct. 24, 2013) (declining to "entertain" defendant's "equitable affirmative defenses" because the defendant, having used proceeds from the note sued upon to commit securities fraud, had "unclean hands"). In *Columbus Steel Castings*, we held that the trial court had erroneously granted a plaintiff's motion to bar the defendant's recoupment defense in an action to recover a debt after the United States Bankruptcy Appellate Panel of the Sixth Circuit had foreseen the defendant's assertion of recoupment in " 'future litigation' " between the parties in state court. *Columbus Steel Castings Co.* at ¶ 38, quoting *Transp. & Transit Assocs. v. Columbus Steel Castings Co.* (*In re Buckeye Steel Castings Co.*), 306 B.R. 186, 191 (Bankr.6thCir. 2004). In *Bash*, recoupment received only a cursory mention in a list of "equitable" defenses the court refused to consider. *Bash* at *57 (listing "accord and satisfaction, release, in pari delicto, waiver, estoppel, setoff and recoupment" as "equitable affirmative defenses" the court refused to consider). Neither of these cases address the propriety of having a jury hear a defense in recoupment asserted to reduce the amount of damages awarded to the plaintiff.

{¶ 32} Moreover, reliance on the doctrine of recoupment as applied in bankruptcy law does not bolster the firm's argument that such a defense is not properly heard before a jury. If a bankruptcy trustee brings a claim that is "paradigmatically legal in nature," such as breach of contract, against a defendant that has not filed a notice of claim in the bankruptcy proceeding, and the defendant asserts a counterclaim against the debtor arising from "a single, disputed, underlying transaction," the defendant "has a right to a jury trial as to the issues in the adversary proceeding, including the recoupment counterclaims."

*Container Recycling Alliance v. Lassman*, 359 B.R. 358, 365 (D.Mass. 2007).[4] Under such circumstances, the Seventh Amendment of the United States Constitution entitles a party asserting recoupment to have a jury hear the defense.

{¶ 33} The trial court did not question whether, "under the principles of the common law [recoupment] existed previously to the adoption of the Constitution," as necessary to find that Dr. Croce had no right to have a jury trial hear his defense. *Belding v. State*, 121 Ohio St. 393, 396 (1929). Instead, the trial court stated that because " 'equitable claims are not triable as of right to a jury,' " and recoupment was "grounded in equity," the jury could not hear Dr. Croce's defense. (Aug. 10, 2022 Journal Entry at 10-11, quoting *Turturice v. AEP Energy Servs., Inc.*, 2008-Ohio-1835, ¶ 20 (10th Dist.) (affirming trial court's decision to try quantum meruit and unjust enrichment claims).) But "equitable" carries two meanings: "1. Just: consistent with principles of justice and right," and "2. Existing in equity; available or sustainable by an action in equity, or under the rules and principles of equity." *Black's Law Dictionary* (12th Ed. 2024). Describing recoupment as an "equitable defense" or an "equitable doctrine" does not prove that it originated in chancery courts. "The terms 'equity' and 'chancery' are commonly used in the United States in the same sense," but that does not mean that every claim or defense now described as "equitable" proves that only chancery courts heard them prior to the ratification of the Ohio Constitution. *Ireland v. Cheney*, 129 Ohio St. 527, 534 (1935). "Recoupment goes to the justice of the plaintiff's claim," in that it allows a defendant otherwise barred by the statute of limitations an opportunity to reduce the plaintiff's recovery. *Ohio State Univ. Hosp. v. Lumaye*, 1992 Ohio App. LEXIS 1601, *3 (10th Dist. Mar. 24, 1992). The trial court's discussion concerned only the fairness of allowing Dr. Croce to present the defense, since he was time-barred from asserting a counterclaim for legal practice. And, like the trial court, Kegler Brown's description of recoupment as equitable only invokes "principles of justice and right," the second definition in *Black's*: "It was only as a matter of *equity* that

---

[4] In contrast, "by filing a claim against a bankruptcy estate the creditor triggers the process of 'allowance and disallowance of claims,' thereby subjecting himself to the bankruptcy court's equitable power," and "[i]f the creditor is met, in turn, with a preference action from the trustee, that action becomes part of the claims-allowance process which is triable only in equity," where "there is no Seventh Amendment right to a jury trial" under the United States Constitution. *Langenkamp v. Culp*, 498 U.S. 42, 44-45 (1990).

Croce could allege legal malpractice, through a recoupment defense."  (Emphasis in original.)  (Brief of Appellee at 13.)

{¶ 34} Having reviewed the application of the recoupment in early cases of the Ohio Supreme Court, which recognized its common law origin in proceedings where evidence supporting it was or should have been presented to a jury, we conclude that the trial court erred by not allowing the jury to hear Dr. Croce's recoupment defense.  Accordingly, the first assignment of error is sustained.

## B.  Second Assignment of Error

{¶ 35} In the second assignment of error, Dr. Croce argues that the trial court erred when it failed to find the evidence of proximate cause necessary for him to prove his recoupment defense.  Having sustained the first assignment of error, the trial court's verdict on his defense will be reversed so that it may be tried to a jury.  Accordingly, we overrule the assignment of error as moot.

## C.  Third Assignment of Error

{¶ 36} In the third assignment of error, Dr. Croce argues that the trial court erred by excluding a portion of the testimony of his expert witness, Carl Kolb, based on "an apparent discovery violation."  (Brief of Appellant at 36.)  The ruling concerned portions of Mr. Kolb's testimony that the trial court could not find in the expert's report.

{¶ 37} During Mr. Kolb's direct examination, Dr. Croce's attorney asked about his "opinion as to what the total reasonable and necessary fees would have been," and Mr. Kolb responded that he divided the fees into two categories: litigation ("both lawsuits, the lawsuit against Sanders, [and] the lawsuit against the New York Times") and nonlitigation ("everything else").  Tr. at 667.  Mr. Kolb stated that he could not "imagine" how the nonlitigation fee could exceed $100,000, and opined that the litigation fee should be derived from "somewhere between 333 hours to 398 hours" of billable work, resulting in "$162,000 at the bottom end to $193,000 at the top end," based on his calculations.  *Id.* at 668.  At that point, the trial court held a sidebar off the record, then returned to tell the jury that

> the last few answers by Mr. Kolb giving estimates on what the total fees should have been is stricken from the record. You're not to consider it. You can consider the 485 rate that he's talked about, but you cannot consider the arithmetic and what he thinks was a reasonable amount of time for the work.

*Id.* at 669.

{¶ 38} After the jury recessed, the trial court supplemented the record with the following explanation:

> We had a conference over at the sidebar off the record partway through Mr. Kolb's testimony following which the Court struck and ordered the jury to disregard [the] $100,000 estimate of total nonlitigation fees that would have been reasonable and an estimate of 162,000 bottom to 193,000 top as the litigation, both lawsuits, computed at $485 an hour that would have been the maximum reasonable fee.
>
> The reason was the Court has been reviewing here at the bench while Mr. Kolb testified his report . . . and found nothing in the report that gave those figures or that analysis other than to the extent that he identifies specific tasks and in theory one could back into. That's the only thing left after you take out the stuff that he thinks is clearly excessive or unnecessary or unreasonable.
>
> In addition, Counsel for Plaintiff represented to the Court that in the deposition of Mr. Kolb there was something similar.

*Id.* at 690-91.

{¶ 39} The trial court concluded by asking counsel if there was "anything else you want to get on the record," and Dr. Croce's attorney responded: "No. I would note that the defense agreed to retract the part of the opinion that was not covered in the expert report understanding that you could back into the number itself. Thank you." *Id.* at 691-92.

{¶ 40} Civil Rule 26(B)(7) governs the disclosure of expert testimony in discovery, and Civ.R. 26(B)(7)(c) addresses expert testimony at trial. The latter provision states: "The report of an expert must disclose a complete statement of all opinions and the basis and reasons for them as to each matter on which the expert will testify." Civ.R. 26(B)(7)(c). The rule further states: "An expert will not be permitted to testify or provide opinions on matters not disclosed in his or her report." *Id.*

{¶ 41} Generally, "[a] trial court has broad discretion when imposing discovery sanctions," and we accordingly "review these rulings only for an abuse of discretion." *Nakoff v. Fairview Gen. Hosp.*, 75 Ohio St.3d 254 (1996), syllabus. Under this standard, we discern no error in the trial court's ruling. After Mr. Kolb opined as to the total amount of "litigation" and "nonlitigation" fees that he believed Kegler Brown was entitled to

recover, the trial court struck the testimony because "nothing in the report that gave those figures or that analysis other than to the extent that he identifies specific tasks and in theory one could back into." (Tr. at 691.) Because those ultimate figures were not disclosed in the report, the trial court properly excluded them under Civ.R. 26(B)(7)(c).

{¶ 42} Kegler Brown also argues that because Dr. Croce's attorney agreed "to retract the testimony he now says should have been allowed," the argument has been waived for purposes of appeal. (Brief of Appellee at 25.) The attorney's representation to the court that he "agreed to retract the part of the opinion that was not covered in the expert report" does support the waiver argument. (Tr. at 691.) However, the actual exchange between the parties and the trial court before the ruling is absent from the record because it occurred at an unrecorded sidebar conference. Because the trial court's ruling fits squarely within its discretion to regulate Mr. Kolb's testimony under Civ.R. 26(B)(7)(c), it is not necessary to resolve the issue by recognizing waiver. We note as well that although the jury heard extensive testimony and arguments from Mr. Kolb in support of the defense's assertion that Kegler Brown's fees were unreasonable, the jury did not find the defense convincing, as is obvious from its verdict awarding every penny of the fees the firm sought. For this reason, Dr. Croce was not prejudiced by the exclusion of his expert's final calculation of what fees the defense deemed reasonable.

{¶ 43} For the foregoing reasons, we conclude that the trial court did not abuse its discretion when striking the portion of Mr. Kolb's testimony not disclosed in his report, and the third assignment of error is accordingly overruled.

## III. Conclusion

{¶ 44} For the foregoing reasons, Dr. Croce's first assignment of error is sustained. The judgment is affirmed concerning the jury's damages award but is reversed as to the trial court's verdict on Dr. Croce's recoupment defense, which must be tried before a jury. The second assignment of error is overruled as moot, and the third assignment of error is overruled.

*Judgment affirmed in part and reversed in part;*
*cause remanded.*

JAMISON, P.J., and BOGGS, J., concur.

————————————